HARRIS TRUST AND SAVINGS BANK, Ex'r of the Estate of Jose Aisenberg, Deceased, Plaintiff-Appellant, *v.* IRVING HIRSCH *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—2712

Opinion filed February 10, 1983.

Daniel Galatzer and Robert R. Kunkel, both of Chicago, for appellant.

Howard Reich, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Harris Trust & Savings Bank, as executor of the estate of Jose Aisenberg, deceased, sought recovery against defendants Irving Hirsch (Hirsch) and Wendell & Co., Inc. (Wendell), for $100,000 of life insurance proceeds received by Wendell and allegedly due plaintiff pursuant to a stock redemption agreement entered into between the parties. Following a bench trial, the trial court found that the agreement was ambiguous and entered judgment in favor of defendants. Plaintiff appeals.

The issues on appeal are (1) whether the trial court correctly found that an ambiguity existed in the stock redemption agreement as a matter of law, and (2) whether the court properly construed the contract to give effect to the intentions of the parties.

The following pertinent evidence was adduced from the pleadings. On December 8, 1975, Aisenberg and Hirsch, who were equal and sole shareholders of stock in Wendell & Co., Inc., a jewelry manufacturer, entered into a stock redemption agreement requiring the corporation to redeem shares owned by either shareholder upon his death.

Under section 2, the corporation was required to purchase and maintain a $75,000 life insurance policy on the life of each shareholder and to hold any proceeds received thereunder in trust for the purposes of the agreement. Section 2 further empowered the corporation to take out additional life insurance on the lives of the two shareholders whenever required to carry out its obligations under the agreement.

Section 3 provided for redemption of the corporate stock and re-evaluation of the purchase price. It recited: "Upon the death of any Shareholder, the corporation shall purchase with its surplus, all of decedent's stock in the corporation now owned or hereafter acquired by him for $75,000 but in no event less than the amount of insurance carried on the life of each Shareholder pursuant to Section 2 ***." The amount of this purchase price provided in this section 3 shall be re-examined by the parties hereto from time to time, but no less than once during every two-year period from the date hereof should the parties, upon such re-examination, determine that the purchase price should be revalued, then this section shall be so amended, by a written instrument signed by all the parties, and made a party hereof. In no event, however, shall the purchase price provided in this section be less than the amount of the life insurance policy on the life of each shareholder.

In addition, the agreement contained other provisions which are immaterial to the questions presented in the case at bar.

Shortly after this first agreement was signed, the amount of the life insurance policies purchased by the corporation was increased to $100,000 each. On February 20, 1976, the two shareholders executed a second stock redemption agreement amending the redemption price and the amount of life insurance the corporation was required to maintain to $100,000 each.

On April 25, 1977, Wendell obtained a guaranty from the Small Business Association (S.B.A.) of a $175,000 loan to be made to it by Exchange National Bank of Chicago (Exchange). One of the loan conditions required by the bank and the S.B.A. was that the shareholders assign their beneficial interest in the life insurance "in favor of [the] Bank and SBA in an amount not less than $87,500.00 each." Wendell accordingly purchased additional life insurance policies of $100,000

each, and on September 29, 1977, Hirsch & Aisenberg assigned their beneficial interest to the bank.

Aisenberg became terminally ill in 1978, and by early 1979 he retained Wendell's corporate attorney, Stephen Schostok, to represent him in miscellaneous personal matters including the preparation of his estate. On March 2, 1979, Schostok prepared and sent a document entitled "First Amendment to Stock Redemption Agreement" to the defendants which would have increased the redemption price to $200,000. This amendment was not executed by the parties. Two weeks later, on March 19, 1979, Schostok prepared a document which stated that: (1) an ambiguity existed with regard to each shareholder's stockhold interest; (2) the parties agreed to affirm the original $100,000 value; and (3) the parties agreed that the second $100,000 was intended as collateral under the S.B.A. loan. This second document was initialled by both parties, however, neither party executed the document in full.

Aisenberg died on April 3, 1979. Plaintiff was named as executor pursuant to the provisions of the agreement and Wendell paid his estate $100,000 in insurance proceeds within 30 days thereof. Plaintiff filed a complaint for declaratory judgment and injunctive relief against defendants and Exchange National Bank seeking, *inter alia*, the $100,000 in proceeds from the second policy assigned to Exchange, and the trial court entered judgment in favor of Exchange.

Subsequently, plaintiff brought suit against defendants in the circuit court of Cook County and by amended complaint sought judgment for $100,000 under a breach of contract theory. On April 13, 1981, defendants moved for summary judgment and plaintiff moved for judgment on the pleadings on May 21, 1981. A hearing was held on both motions on September 2, 1981.

Stephen Schostok testified for plaintiff that, while acting as corporate attorney for Wendell he drafted the stock redemption agreement in such a manner as "to include the purchase of life insurance as the necessary pool of funds to satisfy the fixed value of the corporate stock," and to also provide a mechanism where an additional purchase of insurance would automatically serve to revalue the agreement.

On cross-examination, he stated that his law firm represented plaintiff until substitution of attorney was ordered by the court, however, he still represented the estate of Jose Aisenberg at the time of trial. Schostok further stated that Aisenberg had hired him to prepare his estate in advance when he learned of his terminal illness, and at that time Schostok "observed that the [$100,000] amount in the agreement *** was not in accord with the reality of the amount of

insurance which had, in fact, been purchased *** [a]nd it was [due to his] effort to bring the two together, that that amendment [changing the amount to $200,000] was prepared and sent to Mr. Hirsch."

Irving Hirsch testified on his own behalf that the original $75,000 redemption price was amended to $100,000 after he had "reported to the lawyers that [he] had taken out additional life insurance." He stated that the purpose of the $175,000 S.B.A. loan from Exchange National Bank was to enable Wendell to go into the business of selling jewelry, and the proceeds from the second $100,000 life insurance policy required to collateralize the loan and assigned to Exchange National Bank had been paid to the bank upon Aisenberg's death. The net value of Wendell & Co., Inc., at the time of Aisenberg's death was $27,000.

Following this hearing, the trial court found that: (1) the stock redemption agreement was ambiguous; and (2) the second $100,000 was not part of the agreement, and entered judgment in favor of defendants.

OPINION

We first consider whether the trial court correctly found that an ambiguity existed in the stock redemption agreement as a matter of law.

Initially we note that a court will not resort to rules of construction where an agreement itself is clear and unambiguous. However, where the terms of the agreement itself are not clear, or are ambiguous, the court will construe the contract to determine and give effect to the intention of the parties (*Ricke v. Ricke* (1980), 83 Ill. App. 3d 1115, 405 N.E.2d 351), at the time they entered into the contract. *Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 335, 75 N.E.2d 874, 880.

In the present case, a review of the stock redemption agreement in its entirety indicates that the pertinent provisions are fairly susceptible to more than one interpretation concerning the amount of insurance.

Section 2, *inter alia*, provides for a redemption price of $100,000 to be funded by the proceeds of the life insurance policies on the lives of the two shareholders, and empowers the corporation to take out additional life insurance.

■ Section 3, however initially provides for a reevaluation of the redemption price by a written instrument signed by all the parties, and then concludes by stating that the purchase price shall not be less than the amount of the life insurance policy on the life of each share-

holder. We find these two clauses to be irreconcilable. Accordingly, the trial court correctly determined that an ambiguity existed in the agreement as a matter of law.

We next consider whether the court properly construed the contract to give effect to the intentions of the parties.

It is well settled that the intentions of the parties will be ascertained by an examination of all the facts and circumstances manifested by the evidence, including the relationship of the parties, the subject matter of the contract, and the purpose or object of making the contract. *Aronson v. K. Arakelian, Inc.* (7th Cir. 1946), 154 F.2d 231.

Initially we note that the parties, who were equal shareholders in Wendell, entered into the agreement with the apparent purpose of providing for stock redemption upon the death of either party, and included the life insurance policies merely to provide a necessary pool of funds for the redemption of corporate stock.

■ Next, plaintiff persistently urges us that the automatic reevaluation clause of section 3 unambiguously controls. However, it is basic principle of contract construction that where two clauses conflict, it is the duty of the court to determine which of the two clauses most clearly expresses the chief object and purpose of the contract (*Lehman v. United States* (N.D. Ill. 1956), 139 F. Supp. 10, *aff'd* (7th Cir. 1956), 239 F.2d 139), and for this purpose the trial court followed proper procedure in hearing extraneous evidence. *Greene v. Gust* (1960), 26 Ill. App. 2d 2, 167 N.E.2d 438.

It is clear that a clause which requires something to be done to effect the purpose of the contract is entitled to greater consideration than one which does not (*Lehman v. United States* (N.D. Ill. 1956), 139 F. Supp. 10, *aff'd* (7th Cir. 1956), 239 F.2d 139), and while conduct is not conclusive, the court will look to the parties' action under a contract as strongest evidence of their meaning since the parties to an agreement know best what they meant. Restatement (Second) of Contracts sec. 202, Explanatory Notes, comment *g*, at 90 (1981).

With these principles in mind, we find that the record discloses that the parties did in fact execute a written amendment to the agreement when the redemption price was initially increased from $75,000 to $100,000 pursuant to the former clause of article 3.

■ In contrast, when the second $100,000 policy was taken out at the request of the bank to collateralize the S.B.A. loan, Aisenberg assigned his beneficial interest to the bank to fulfill the loan conditions imposed by the bank and the S.B.A. His attempts to amend the agreement to include the second policy came in the month prior to his

death as part of his premortem estate planning, and nowhere does the record indicate that any amendment was ever signed by both parties. Consequently, the second policy was never part of the stock redemption agreement. Accordingly, we find that the trial court properly construed the contract to give effect to the intentions of the parties.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WILSON, P.J., and MEJDA, J., concur.