McDONALD'S CORPORATION, Plaintiff-Appellee, v. RICHARD MAZUR *et al.*, Defendants-Appellants.

First District (4th Division)   No. 83—2069

Opinion filed September 27, 1984.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker and Howard A. London, of counsel), for appellants.

Frederic S. Lane and Richard L. Fenton, both of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, McDonald's Corporation, filed a complaint in the circuit court of Cook County for declaratory judgment against defendants, Richard Mazur, Benjamin Kramer, Sol Reifler, Ben Borenstein, Dan Cross, Jason Sharps, 3433 23rd Avenue Drive-In, Inc., 3303 North Brady Street Drive-In, Inc., and 2409 11th Street Drive-In, Inc.

The trial court entered an order granting summary judgment for McDonald's, and defendants have appealed. The issue on appeal is whether the trial court erred in ruling that the plaintiff had a right, under the license agreement, to review defendants' corporate records in order to determine stock ownership.

We affirm.

The parties agree that there is no dispute of fact.

On December 8, 1982, McDonald's filed its complaint for declaratory judgment against defendants. The complaint alleged that McDonald's is in the business of operating, franchising and servicing limited menu fast food restaurants known as "McDonald's Restaurants." Plaintiff described itself as a "system" which offers a comprehensive concept for the operation of retail restaurants which serve high-quality uniform food in an atmosphere designed to appeal to a broad cross-section of people. Plaintiff approves individual licensees for a franchise to use the McDonald's name by means of a specific agreement which permits participation in the McDonald's system.

Plaintiff entered into a license agreement with William Barr on April 14, 1965. Under the agreement, Barr was authorized to operate certain McDonald's restaurants. That agreement was subsequently assigned to defendant Mazur and Gary Swanson, in 1968. In 1973, Mazur and Swanson assigned the agreement to the corporate defendants, 3433 22nd Avenue Drive-In, Inc., located in Moline, Illinois, 2409 11th Street Drive-In, Inc., located in Rock Island, Illinois, and 3303 North Brady Street Drive-In, Inc., located in Davenport, Iowa. McDonald's consented to the assignments on the condition that defendant Mazur would remain liable for the covenants of the license agreement. In agreeing to the assignments, McDonald's included the condition that there be no assignment or transfer of the franchise without prior written consent of McDonald's. McDonald's referred to paragraph 14

of the agreement made with William Barr in 1965. That paragraph states:

> "14. *Agreement Not Assignable.* Licensee shall not sell, assign, transfer, convey or encumber this Agreement or any right or interest therein or thereunder, or suffer or permit any such assignment, transfer or encumbrance to occur by operation of law, unless the written consent of the Licensor be first had and obtained. In the event of the death of the Licensee, or if the Licensee is a corporation in the event of the death of a stockholder therein, the Licensor shall not unreasonably withhold its consent to a sale or assignment of Licensee's interest herein, or if Licensee is a corporation, of the decedent's stock in said corporation, to a descendant of decedent, who shall in the sole judgment of Licensor, be capable of performing the duties and obligations of the Licensee hereunder or to a responsible bona fide purchaser acceptable to the Licensor. In the case of any such sale or assignment so consented to by the Licensor, the assignee shall agree in writing with the Licensor to assume and perform all of Licensee's covenants and agreements contained herein.
>
> If Licensee is a corporation, or if with the consent of Licensor, the rights of Licensee hereunder are assigned to a corporation, then and in such event
>
> WILLIAM BARR
>
> shall remain the legal and beneficial owners of not less than 51% of the capital stock thereof during the entire term hereof, and, except as expressly provided herein, the assignment, either voluntarily or by operation of law, of more than 49% of said capital stock without the prior express written consent of Licensor to any other person shall constitute a breach of the terms of this Agreement."

Plaintiff's complaint alleged that the corporate defendants are required to produce for inspection by plaintiff all corporate minute books, stock records and other corporate records which show ownership interests in the corporate defendants. Plaintiff asserted that paragraph 12 of the license agreement obligates defendants to produce the records in question for inspection by plaintiff. Paragraph 12 of the license agreement states:

> "12. *Service Fees.* For and during the term of this Agreement, Licensee shall pay semi-monthly to Licensor as service fees and, in consideration of all services to be rendered and facilities to be made available, one and nine tenths (1.9%) percent

of the gross sales which Licensee shall receive from the operation of said establishment. On the fifth and sixteenth days of each calendar month Licensee shall render to Licensor a full and complete statement, in such form as Licensor shall require, of all receipts from the operations of said establishment for the preceding semi-monthly period and shall thereupon pay to Licensor the percentage of gross sales from the operation of said establishment for said period as hereinbefore set forth. On or before the twenty-fifth (25th) day of each month, Licensee shall submit to Licensor, a complete operating statement for the previous month in form satisfactory to Licensor. Licensee shall keep and preserve full and complete records of all gross sales in manner and form satisfactory to Licensor and shall submit such other financial data as Licensor may request on the accounting forms and in the manner prescribed by Licensor. The term 'gross sales' shall exclude bona fide credits and returns for merchandise and the amounts turned over by Licensee for Retailer's Occupation Tax, Use Tax, Sales Tax, and all other taxes levied by municipal, county, state, and federal governmental bodies on sales of any merchandise and/or services.

Any and all service fees that may be and become due and owing from Licensee shall bear interest from and after the respective due dates thereof at the rate of seven (7%) percent per annum.

The accounts, books, records and tax returns of Licensee, so far as the same pertain to the business transacted under the provisions of this Agreement, shall be open to the inspection, examination and/or audit by Licensor and its authorized representatives at all reasonable times. Any such inspection, examination and/or audit shall be at Licensor's cost and expense unless the same is either necessitated by Licensee's failure to prepare and deliver its statement of gross sales or operating statement, or to keep and preserve records as hereinabove provided, or such inspection discloses that any such statement made and delivered by Licensee is in error to an extent of five (5%) percent or more, in either of which events such cost and expense shall be borne and paid by Licensee upon demand."

Plaintiff requested the aforementioned records from the corporate defendants for the purpose of determining the current stock ownership of the corporations and whether any unauthorized assignments or transfers of interests had taken place. Defendants refused to produce the records, and McDonald's sought a declaratory judgment and in-

junctive relief. McDonald's asked the trial court to declare that defendants are required to produce the records in question, which reflect stock ownership of the three corporate defendants. Plaintiff also sought attorney fees and costs.

Defendants answered and counterclaimed, agreeing to the factual allegations of plaintiff's complaint, but asking that McDonald's be denied relief. Defendants asked the circuit court to declare that plaintiff does not have the right, under the language of the license agreement, to examine nonfinancial records of the corporate defendants. Both parties sought summary judgment.

On July 21, 1983, the circuit court granted McDonald's motion for summary judgment and ordered defendants to produce corporate minute books, stock record books, and all other records which reflect stock ownership of the corporate defendants. The question of attorney fees was reserved by the court.

Defendants make two arguments in support of their contention that the trial court's ruling was erroneous. They argue that McDonald's contractual right to review the records extends only to financial records and that McDonald's was not entitled to injunctive relief under these facts. Defendants contend that the language of paragraph 12 of the license agreement only gives McDonald's the right to review records of gross sales and financial data, for the purpose of verifying financial information provided by the corporate defendants. Therefore, the contractual language relied upon by McDonald's is expressly limited to the aforementioned verification of financial data. The fact that the language relied upon by McDonald's is found in the paragraph entitled "Service Fees" is further support for the position that McDonald's has no right to examine records other than financial records which relate to sales. Second, the trial court's order that defendants produce the records in question was an erroneous grant of injunctive relief, since the license agreement does not give McDonald's the right it claims to have.

In resolving the dispute, we agree with plaintiff that the basic issue before this court is whether the facts as stipulated sustain the judgment of the trial court. The specific language around which this dispute centers is found in the third subparagraph of paragraph 12 of the license agreement.

■ Plaintiff contends that the language is broad and permits inspection of documents which are pertinent to all business carried out under the license agreement. Defendants, on the other hand, urge us to resort to various rules of construction of the contractual language. A court will not resort to rules of construction where an agreement is

clear and unambiguous. (*Harris Trust & Savings Bank v. Hirsch* (1983), 112 Ill. App. 3d 895, 899, 445 N.E.2d 1236, 1239.) In this case, the parties each state that the language of the contract is unambiguous, notwithstanding that each party gives a different meaning to the language in question. Accordingly, we will not resort to rules of construction but will look instead at the plain meaning of the language of the license agreement.

■ In adhering to the principle that a contract must be read as a whole and all parts construed together (*Preski v. Warchol Construction Co.* (1982), 111 Ill. App. 3d 641, 645, 444 N.E.2d 1105, 1108), we reject defendants' argument that the language in the third subparagraph of paragraph 12 refers only to matters contained in that paragraph. We hold that the language refers to the contract as a whole.

When contract terms are clear and unambiguous, they must be given their ordinary and natural meaning. (*Board of Education v. Chicago Teachers Union* (1980), 89 Ill. App. 3d 861, 866, 412 N.E.2d 587, 591.) When read in conjunction with all other provisions of the license agreement, we believe that the language of paragraph 12 clearly gives McDonald's contractual right to inspect documents which relate to the operation of the business. The question then becomes whether ownership of the business is related to operation of the business.

■ Plaintiff is persuasive with its argument that the identities of the individuals who represent its name in the marketplace, and who profit from participation in the McDonald's system, are pertinent factors in the transaction of business under the license agreement. Additionally, plaintiff points out that the license agreement makes no distinction between passive and active shareholders. Therefore, defendants' attempt to distinguish the two for the purpose of determining the meaning of the language of paragraph 12 does not abrogate their contractual obligation to permit plaintiff to inspect the records in question.

■ Similarly, we reject defendants' argument that the trial court erroneously imposed an injunction. That argument is premised upon the theory that the trial court's interpretation of the contractual language was erroneous. Our review of the record shows that the trial court's understanding of the contractual language was correct. Further, McDonald's has argued convincingly that defendants' failure to produce the records goes to the very basis of the contractual and business relationship. Any potential harm which plaintiff may suffer as a result of defendants' failure to honor the contract could not be remedied by an action at law, since the records in question are necessary

to determine whether there has been a breach of the license agreement. The trial court did not abuse its discretion in granting the injunctive relief sought by plaintiff.

Accordingly, we find that the circuit court acted properly, and its judgment will, therefore, be affirmed.

Affirmed.

LINN, P.J., and ROMITI, J., concur.