WHITING CORPORATION, Plaintiff-Appellee and Cross-Appellant, v. PROFESSIONAL EMPLOYMENT, INC., Defendant-Appellant and Cross-Appellee.

First District (6th Division)   No. 1—88—1002

Opinion filed July 21, 1989.

Patrick I. Hartnett and Robert D. Shearer, Jr., both of Chicago, for appellant.

Winston & Strawn, of Chicago (Thomas J. Frederick and Robert S. Grabemann, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Whiting Corporation (Whiting), sued the defendant, Professional Employment, Inc. (Professional), for breach of contract and the recovery of a $5,980 fee which plaintiff had paid to defendant for referring an individual to it for employment as an engineer. The employee that defendant had referred to Whiting was later fired, and plaintiff requested its money back in accordance with defendant's unconditional guarantee. The defendant refused, and after a bench trial, the circuit court of Cook County entered judgment for the plaintiff in the amount of the fee that plaintiff had paid to the defendant, Professional. The trial court, however, denied plaintiff's request for attorney fees for the allegedly false and baseless pleadings and defense of defendant pursuant to section 2—611 of the Code of Civil Procedure. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) Defendant now appeals the court's judgment which awarded plaintiff $5,980, and plaintiff cross-appeals the court's denial of attorney fees under section 2—611.

In 1986, the plaintiff, Whiting, was interested in hiring a field service engineer, and as a result hired the defendant, a firm that specialized in employee placement, to find a suitable candidate. The defendant referred Russel Vogel to plaintiff as a candidate for the position. Vogel was interviewed by the plaintiff's director of employee operations, John Fisher, who, although he believed that Vogel was technically qualified for the job, had some reservations about whether Vogel was properly suited for the position. Whiting decided that it needed a trial period in order to appropriately evaluate Vogel for the job. Thus, Whiting inquired about the defendant's guarantee policy before it hired Vogel, and the defendant told plaintiff it had a 100% unconditional guarantee policy, which plaintiff took to mean a money-back policy. Both plaintiff and defendant thereafter agreed to the terms which provided that, under defendant's unconditional guarantee, plaintiff had 60 days within which to terminate Vogel's employment, as long as plaintiff paid the full fee within 10 days of Vogel's hiring.

On May 19, 1986, plaintiff hired Vogel, and within 10 days, plaintiff paid the defendant the agreed-upon fee of $5,980. A few weeks later, plaintiff determined that Vogel was not suitable for the position, and so, on June 13, 1986, plaintiff fired Vogel. Plaintiff then requested a refund of the $5,980 fee it had paid. As stated above, defendant refused to refund plaintiff's money, and plaintiff filed this lawsuit to recover the fee, alleging that defendant's unconditional guarantee entitled plaintiff to repayment of the fee if plaintiff fired Vogel within a 60-day period and plaintiff had paid defendant's fee within 10 days of Vogel's hiring. The defendant denied that it had

ever told or represented to the plaintiff that the guarantee entitled plaintiff to a refund of its money, and asserted that its unconditional guarantee meant only that it would provide a replacement without any additional cost to plaintiff.

Subsequently, the case proceeded to trial before the court, and the plaintiff presented several witnesses who worked at Whiting to explain the agreement between Whiting and the defendant. The plaintiff presented the testimony of Fred Teggelar, Whiting's risk manager; John Fisher, the director of employee relations at Whiting; and David Witthrow, a manager at Whiting. Their testimony basically established that Whiting had negotiated the agreement with defendant through John Culkeen, an employee of defendant, and that Culkeen had assured plaintiff that the guarantee was unconditional if Vogel was fired within 60 days and the fee was paid within 10 days of Vogel's hiring. Whiting's witnesses testified that they accordingly believed that the defendant's unconditional guarantee meant that defendant would refund Whiting's fee if the employee did not work out. However, these witnesses admitted that no one had explicitly told them that "unconditional guarantee" meant a full refund of the fee. On the other hand, Whiting's witnesses further stated that no one from defendant's office ever told them, prior to Vogel's hiring, that "unconditional guarantee" meant only free replacement of the employee.

Whiting's chief financial officer, Jefferey Kahn, also testified and said that he had specifically discussed the defendant's unconditional guarantee with John Fisher. Kahn stated that there was no mention of a replacement-only policy in their discussion, and that he was only concerned with whether their money would be refunded if they later fired the employee. In addition, Kahn said that in November 1986, several months after the Vogel incident, he had a conversation with Jim Ford, who worked for defendant. Ford had called Kahn to inquire about Whiting using defendant's services to fill financial positions at Whiting. Kahn said that he had told Ford at that time that before he would agree to use defendant's services, he wanted to know what defendant's guarantee policy was and that Ford then told him that if the employee left within 30 days, the client company would not have to pay, and, if the client paid, the fee would be refunded. Kahn then stated that he asked Ford for a written confirmation of this policy, and Ford sent Kahn defendant's brochure, which was admitted at trial. That brochure stated that there was a "Full 30 Day Unconditional Guarantee." Kahn called Ford again and specifically asked him for something in writing to confirm that this guarantee was a refund

policy. Ford agreed, but later called Kahn back and told him that his manager would not allow him to do so, and that he, Ford, had misunderstood the policy. Nevertheless, Ford also told Kahn that since most clients did not pay within 30 days, the refund issue really didn't matter anyway.

Plaintiff presented Ms. Joyce Markmann as a witness. Ms. Markmann worked for the Illinois Department of Labor and was, at the time of her testimony, responsible for the licensing and regulation of employment agencies, but not executive search firms, since they did not need to register with the State.[1] Ms. Markmann testified that she also handled complaints about these agencies and that these complaints often involved "guarantee" types of issues for both agencies and executive search firms. She testified that in the industry, "unconditional guarantee" means that if the employee is fired within 30 days, the agency will refund 100% of the fee.

Ms. Markmann also testified regarding two of defendant's Illinois Department of Labor applications for registration with the State[2], which it had filed with the Department in 1979 and 1982. These applications, as required by law, she explained, set forth defendant's guarantee policy. The guarantee policy, as stated in the 1979 application, was a 30-day guarantee that provided if the employee was terminated within that time, the fee would be refunded within 24 hours. On its 1982 application, she further testified, the defendant's guarantee policy was described simply as an unconditional guarantee. Markmann also stated that employment agencies that must register with the Department are required to offer a certain minimum amount money-back guarantee.

In its case the defendant presented its president, Douglas Dawson, who testified that the term "unconditional guarantee," by both his own and the industry definition, meant merely replacement, not refund, and he said that he never had nor would he ever promise a cash refund to plaintiff or anyone else. Dawson also testified that be-

---

[1] The testimony at trial revealed that employment agencies are different than executive search firms in that, basically, executive search firms place people only in executive, professional, and managerial types of positions. The defense testimony suggested that defendant previously placed employees in all types of positions, but, after 1982, defendant placed people only in executive, professional, and managerial positions, and, thus, did not have to register with the Illinois Department of Labor at the time of this suit.

[2] As Ms. Markmann explained, only employment agencies, not executive search firms, are required to be licensed by the State Department of Labor, and thus, prior to 1982, defendant, as an employment agency, was required to file these applications in order to be registered with the State.

fore 1982 the defendant was more of an employment agency and, hence, was required to register with the Department of Labor and only as part of those requirements did it offer a refund guarantee. In addition, the defendant presented Mr. Leslie Vaughn, who was the president of his own executive search firm. Mr. Vaughn testified that in the industry "unconditional guarantee" normally means that if the employee doesn't last 30 days, the firm will replace the employee free of charge, or will offer a credit towards a future placement. He stated that it is not customary to refund fees. On cross-examination, however, Mr. Vaughn admitted that he had formerly been employed by the defendant and that he had also signed the defendant's 1982 Department of Labor application for registration in his capacity as the secretary of the defendant's corporation.

Finally, the defense presented Anderson Richardson, who was the defendant's engineering department manager at the time of Vogel's hiring. Richardson testified that John Culkeen had worked in defendant's engineering department and that Culkeen was the employee who had negotiated the arrangement with plaintiff. Richardson stated that Culkeen came to him for approval of the extended, 60-day guarantee with plaintiff and that he had approved the extension. Richardson stated that "unconditional guarantee" meant replacement, not refund, and that neither he, nor anyone he was aware of, offered plaintiff a cash refund.

After the close of this evidence, the trial court heard closing arguments and found that the express terms of the contract controlled over custom and usage and that the contract terms here were to be given their generally accepted meaning. The court ruled that the agreement, *i.e.*, the defendant's unconditional guarantee, in its opinion, was clearly intended to mean a return of the fee paid and, consequently, entered judgment for the plaintiff. The court also noted that it had found that the credibility of the plaintiff's witnesses outweighed the credibility of the defense witnesses, that the defendant's employees had merely "danced around" the issue of what the policy meant and what they told the plaintiff it meant, and that the plaintiff's witnesses were more straightforward, and, thus, more believable. The court, however, as noted earlier, denied the plaintiff's request for attorney fees under section 2—611 of the Code of Civil Procedure. See Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

On appeal, defendant raises the issue of whether the trial court erred when it entered judgment for plaintiff because: (1) plaintiff failed to meet its burden of proof; or, alternatively, (2) extrinsic evidence was improperly admitted concerning the term "unconditional

guarantee," including the admission of defendant's prior Department of Labor applications and the testimony concerning the representations made to Jeffrey Kahn, by Jim Ford, concerning defendant's guarantee policy. In its cross-appeal, the plaintiff again argues that the trial court should have granted plaintiff attorney fees under section 2—611 based on defendant's baseless denials of liability.

Defendant first alleges that the court erred in entering judgment for the plaintiff because the plaintiff failed to prove, by a preponderance of the evidence, the specific allegation in its complaint that the defendant told plaintiff that "unconditional guarantee" meant that plaintiff was entitled to a full refund of the fee. Defendant claims that, at best, plaintiff may have proven that "unconditional guarantee" meant that if Vogel was fired within 60 days, the agreed upon time period for the guarantee, there would be "no cost" to plaintiff. Defendant asserts that its witnesses testified that the term meant replacement only, not refund. Hence, defendant concludes that plaintiff failed to prove its case.

As an alternative argument, the defendant claims that because the term "unconditional guarantee" was clear and unambiguous, the court was bound to judge the matter on the basis of the common meaning of the unambiguous term, and, thus, the consideration of any extrinsic evidence to interpret the unambiguous term was erroneous. The defendant specifically contends that the admission of Joyce Markmann's testimony concerning the custom and usage definition of "unconditional guarantee" was also improper because, as stated, the term was unambiguous. Moreover, defendant argues, Markmann's testimony was both improper and irrelevant since she only dealt with employment agencies, and not executive search firms, and the defendant was admittedly an executive search firm when it placed Vogel. Similarly, defendant asserts that the trial court improperly admitted defendant's 1979 and 1982 applications for registration because they had been filed at a time when defendant was an employment agency, and required by law to offer a refund, and thus, these applications were irrelevant. Additionally, defendant also claims that Jeffrey Kahn's testimony was improper because, first, he testified as to the hearsay statements of Jim Ford, and, second, the conversations between Kahn and Ford were irrelevant, in any event, because they took place well after the Vogel incident and because Ford was not a supervisor for the defendant and was not in a position to speak on defendant's policy.

The plaintiff, on the other hand, claims that it properly proved its case before the trial court. Plaintiff asserts that it had no burden to

present direct evidence that the defendant's employees specifically stated that "unconditional guarantee" meant that plaintiff would get its money back. The only thing, plaintiff contends, that it was required to do was to show that defendant gave an unconditional guarantee, that this reasonably meant a refund, and that defendant had never indicated anything to the contrary. Plaintiff asserts that it proved these matters at trial. The term "unconditional guarantee" was, the plaintiff argues, found to be clear and unambiguous, and, therefore, the court properly entered judgment for the plaintiff. However, even if the term was determined to be ambiguous, plaintiff argues, it would, nevertheless, be construed against the drafter, *i.e.*, the defendant here, and since the defendant used the term and made no effort to clarify its meaning, plaintiff was reasonable in believing that defendant was required to return the fee.

Plaintiff agrees with the defendant that the law does not allow extrinsic evidence in a situation such as this, but claims that a review of the trial court record clearly demonstrates that the trial court did not rely on any extrinsic evidence in its ruling here. The court properly found that there was an agreement between plaintiff and defendant providing for an unconditional guarantee, which meant that a return of the money would be provided if the plaintiff was dissatisfied.

However, if the term was ambiguous, and the admission of the extrinsic evidence was appropriate, plaintiff asserts that, nonetheless, Ms. Markmann's testimony would have been proper. She was a qualified expert witness in this area and defendant never made any objections to her qualifications or to the custom and usage definition of "unconditional guarantee" to which she testified. Moreover, even defendant's own theory at trial, plaintiff asserts, was based on its own experts' custom and usage definition. The admission of defendant's registration applications was proper if the term was ambiguous, plaintiff also contends, as was the admission of Kahn's testimony which showed the inconsistency in defendant's representations of its guarantee policy to its clients.

■ It is the function of the trier of fact to assess the credibility of the witnesses and the weight to be accorded their testimony, and the trier of fact's determination will not be overturned on review unless it is contrary to the manifest weight of the evidence. *Midland Hotel Corp. v. Reuben H. Donnelly Corp.* (1987), 118 Ill. 2d 306, 312-13, 515 N.E.2d 61, 64.

■ When a dispute arises over a certain term in a contract, the court must first determine whether the disputed term is ambiguous or unambiguous. Where the contract term is clear and unambiguous,

that term must be given its ordinary and natural meaning, and other rules of contract construction, as well as extrinsic evidence, do not apply. (*McDonald's Corp. v. Mazur* (1984), 127 Ill. App. 3d 608, 612-13, 469 N.E.2d 430, 434.) Contract language is not rendered ambiguous merely because the parties do not agree upon the meaning of the language. (*Berutti v. Dierks Foods, Inc.* (1986), 145 Ill. App. 3d 931, 934, 496 N.E.2d 350, 352.) A contract term is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions, and it is not ambiguous if a court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. (*Berutti*, 145 Ill. App. 3d at 934, 496 N.E.2d at 352.) Additionally, it is well settled in Illinois that contract language which is ambiguous or uncertain should be resolved against the party who created it. *Berutti*, 145 Ill. App. 3d at 934, 496 N.E.2d at 352.

■ There does not seem to be any question that the plaintiff met its burden of proof here. The defendant apparently relies only on the language in plaintiff's complaint as support for its claim that plaintiff did not prove its cause of action. We find no foundation for the defendant's contentions. The allegations here were of a breach of contract, and the evidence offered in support of those allegations, when viewed as a whole, was sufficient to support the court's judgment. Plaintiff established that there was a valid agreement by presenting evidence of the essential terms of the contract, to which defendant, with the exception of the definition of "unconditional guarantee," agreed. There was, in addition, evidence of the breach of the agreement and evidence of the damages plaintiff suffered as a result of defendant's breach. Hence, there was no need for plaintiff to prove any specific statements made to plaintiff by defendant's employees in order to establish its case. Here, the plaintiff met its burden of proof, as required by its allegations, and the trial court's finding was not contrary to the manifest weight of the evidence.

■ While both parties, in their briefs, seem to agree that the disputed term "unconditional guarantee" was unambiguous, they disagree on the meaning of the term. In such a case, where a term is unambiguous, the common and ordinary meaning must be used to resolve the dispute. (See *McDonald's*, 127 Ill. App. 3d 608, 469 N.E.2d 430.) Surely, the common meaning of 100% unconditional guarantee would encompass a full, money-back refund. Thus, we agree with the trial court's finding here that the common and ordinary meaning of this unambiguous term required a return of the fee that plaintiff had paid to defendant.

■ Since we agree with the trial court and, apparently now, both parties, that this term was unambiguous, there was no need for the trial court to consider any extrinsic evidence. However, we do not believe that admission of this evidence was reversible error because the trial court did not rely on this extrinsic evidence in its ruling below. Even if it could be argued that the admission of this evidence somehow clouded the court's judgment, it is unclear how the defendant was prejudiced, because even though extrinsic evidence was actually presented by the plaintiff, such evidence was presented by the defendant as well. Furthermore, the defendant never objected to Ms. Markmann's qualifications at trial, nor did it object to Jeffrey Kahn's testimony concerning Jim Ford's representations to him, and, thus, any error in these matters was waived for review. We find that the trial court properly entered judgment for the plaintiff and did not err by allowing this testimony.

On cross-appeal, plaintiff contends that the trial court erred when it denied its motion for attorney fees under section 2—611. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) Plaintiff argues that it was entitled to recover attorney fees under section 2—611 because defendant denied all liability in its pleadings and stated that it had told plaintiff of its alleged replacement policy and then failed to present any evidence at trial in support of that claim. This demonstrated, plaintiff asserts, that the defendant had an improper purpose in denying liability and that it was merely attempting to drag out the litigation. Defendant responds that the trial judge properly denied the plaintiff's fees claim because it had no improper purpose in denying liability and, in fact, every defendant is entitled to deny liability, thereby forcing plaintiff to prove its allegations.

■ The decision of the trial judge whether to allow a recovery under section 2—611 is within the sound discretion of the trial judge, and, absent an abuse of that discretion, that decision will not be overturned on appeal. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77-78, 535 N.E.2d 876, 883.) Section 2—611 is also to be strictly construed, and the party seeking to recover under it has the burden of proving that his opponent made untrue allegations without reasonable cause. *Wernick*, 127 Ill. 2d at 77, 535 N.E.2d at 883.

■ There was no abuse of discretion here. Plaintiff essentially claims that because the defendant denied liability in its pleadings, and then lost the case in court, that it should now, because of this, be required to pay attorney fees under section 2—611. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) The mere denial of liability, where the defendant is ultimately found liable, is not a sufficient basis for the

award of section 2—611 fees. Thus, plaintiff was not entitled to fees and the trial court correctly denied its request.

For all of the above reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McNAMARA and LaPORTA, JJ., concur.