LOUIS DATO *et al.*, Plaintiffs and Counterdefendants-Appellants, v. ARTHUR A. MASCARELLO, Defendant and Counterplaintiff-Appellee.

First District (4th Division)   No. 1—87—3261

Opinion filed December 7, 1989.—Rehearing denied May 30, 1990.

Jeffrey H. Bunn, of Lupel & Bunn, of Chicago, for appellants.

Richard J. Nakon, of Palatine, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff-counterdefendant Louis Dato (plaintiff)[1] appeals from a judgment order in favor of defendant-counterplaintiff Arthur Mascarello (defendant) in an action arising from a commercial real estate

---

[1]Our use of the term "plaintiffs" in the summary of facts refers to both Louis Dato and Robert Marsh. We have been informed that Mr. Marsh died prior to the trial of this case. Consequently, throughout the remainder of the opinion, we use the singular "plaintiff" in reference to the appellant, Mr. Dato.

transaction. Plaintiff contends that the trial court erred in its award and calculation of damages on defendant's counterclaim.

The facts of the case, which are largely undisputed, will be set forth only to the extent they are relevant to the issue presented. On July 3, 1979, the parties executed a written contract for the sale and purchase of a parcel of commercial property in Bellwood, Illinois. The contract provided, *inter alia*, that the purchase price was $215,000; that upon payment of $21,500 earnest money, plaintiffs would be permitted to take possession of the property; that closing would take place within seven days after issuance of a title insurance commitment; that at the closing, plaintiffs would pay to defendant the sum of $13,500 plus or minus prorations; and that defendant would hold a purchase money mortgage secured by a note from plaintiffs for the remaining amount of $180,000. The parties also entered into a separate agreement for the sale of various items of personal property for an agreed price of $7,000. There is a dispute as to when closing originally was to have taken place and why it did not occur as scheduled. However, it is agreed that plaintiffs took possession of the property on July 23, 1979, and that closing was rescheduled for September 14, 1979. On September 13, 1979, plaintiffs presented defendant with an itemized list of defects in need of repair (the punchlist) which plaintiffs had discovered after taking possession of the property. In addition to the dispute concerning the punchlist, a disagreement arose regarding whether certain items of personalty were to be conveyed with the property.

These disputes resulted in the cancellation of the September 14 closing and the filing of plaintiffs' original complaint seeking injunctive relief, specific performance of the contract, and damages for defendant's failure to make the necessary repairs of the items on the punchlist. Defendant thereafter filed his answer and a counterclaim alleging breach of contract by plaintiffs, seeking forfeiture of the earnest money and an order requiring plaintiffs to pay rent on a *per diem* basis from the date of their possession of the property.

The parties eventually executed an agreement to close the sale of the property on February 22, 1980, without prejudice to their respective rights under the real estate contract. Throughout the seven-month period between the date plaintiffs took possession of the property and the date of closing, defendant continued to collect the rents and to pay all taxes, insurance, utilities and maintenance costs (operating expenses) relating to the property.

On July 24, 1980, plaintiffs filed an amended complaint seeking reimbursement for the cost of the repairs not made by defendant and

a declaration of the rights and liabilities of the parties with respect to the separate agreement regarding the items of personal property in dispute. Defendant filed an answer, affirmative defenses and an amended counterclaim seeking (1) payment of the full amount agreed upon for the personal property; and (2) damages equivalent to (a) the lost interest on the amount of the unpaid purchase price plus (b) the sums expended by him for the operating expenses during the seven months plaintiffs were in possession of the property prior to closing.

Following a bench trial, the trial court ruled that defendant owed plaintiff $2,000 as reimbursement for the reasonable cost of repairs of the defects itemized on the punchlist; that plaintiff was entitled to the rents of $2,450 collected by defendant during the seven months plaintiff was in possession of the property; that plaintiff, as a vendee in beneficial possession of the property for those seven months, was obligated to pay defendant $11,287.50 in interest on the unpaid purchase price of $180,000; and that plaintiff was further liable to defendant for all operating expenses paid by defendant during that period, which amounted to $10,015. The order resulted in a net judgment in favor of defendant and against plaintiff in the amount of $19,852.60. The trial court denied plaintiff's motion to vacate or modify the judgment, and this appeal followed.

Opinion

Plaintiff contends that the order of the trial court constituted an unwarranted judicial reformation of the parties' written contract which was based on the court's erroneous reliance on inapplicable authorities. He asserts that the written contract is clear and unambiguous in expressing the intentions of the parties as to their rights and obligations, and that the court's award of damages on defendant's counterclaim is contrary to the intentions expressed in the contract.

■■■ The overriding objective in contract litigation is to give effect to the intentions of the parties. (*Braeside Realty Trust v. Cimino* (1985), 133 Ill. App. 3d 1009, 479 N.E.2d 1031.) Where an agreement is clear and unambiguous, a court should not resort to rules of construction or principles of equity (*Harris Trust & Savings Bank v. Hirsch* (1983), 112 Ill. App. 3d 895, 445 N.E.2d 1236). On the other hand, where an ambiguity arises from the written agreement, a court is not confined to a strict and literal construction of the language used, if such construction would frustrate the intentions of the parties as gathered from the agreement as a whole. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 478 N.E.2d 311.) In such circumstances, the court may look to extrinsic facts surrounding the formation of the

contract to determine and give effect to the intentions of the parties at the time they entered into the agreement. (*Harris*, 112 Ill. App. 3d 895, 445 N.E.2d 1236; *Wald v. Chicago Shippers Association* (1988), 175 Ill. App. 3d 607, 529 N.E.2d 1138.) The court noted in *Pieszchalski v. Oslager* (1984), 128 Ill. App. 3d 437, 470 N.E.2d 1083, that the construction of a written contract should be controlled by its spirit and purpose, and a strict construction which renders a result different from that which the parties intended should not be adopted. Whether ambiguity exists in a contract is to be determined by the trial court as a question of law (*Turner Construction Co. v. Midwest Curtainwalls, Inc.* (1989), 187 Ill. App. 3d 417, 543 N.E.2d 249). Where the court determines that an ambiguity exists, its subsequent construction of the contract will not be disturbed on review, unless it is contrary to the manifest weight of the evidence (*Michigan Avenue National Bank v. Evans, Inc.* (1988), 176 Ill. App. 3d 1047, 531 N.E.2d 872).

Plaintiff correctly argues that if a contract purports to be a complete expression of the intentions of the parties, courts should not add other terms about which the agreement is silent. (*Schuch v. University of Chicago* (1980), 87 Ill. App. 3d 856, 410 N.E.2d 258.) However, a written contract need not provide for every feasible contingency which might arise in the future to be enforceable. (*Morey v. Hoffman* (1957), 12 Ill. 2d 125, 145 N.E.2d 644.) Indeed, as observed in *David M. Kaufman Associates, Inc. v. Lake County Trust Co.* (1987), 157 Ill. App. 3d 926, 510 N.E.2d 919, most agreements have some degree of indefiniteness and uncertainty. As stated in section 204 of Restatement (Second) of Contracts, "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." (Restatement (Second) of Contracts, §204, at 96-97 (1981).) The comments to section 204 explain that such an omission may occur when the parties to an agreement entirely fail to foresee the situation which later occurs and gives rise to the dispute. In such cases, they have no expectations with respect to that situation and a search of the agreement for their intentions regarding it would be fruitless. In those circumstances, a court may supply a term which it determines to be reasonable either by logical deduction from the agreed terms or on the basis of what comports with standards of fairness. The supplying of omitted terms which are essential to a determination of the rights and duties of the parties who have entered into an otherwise binding agreement is not technically "interpretation" of

the contract, since "interpretation" involves the ascertainment of the meaning of the terms which are contained in the instrument but which are unclear or ambiguous. See Restatement (Second) of Contracts §§200 through 204 (1981).

As noted above, plaintiff, in arguing that the trial court erroneously resorted to rules of construction and principles of equity in this case, relies upon the general principles that a court should not undertake to construe a contract which is clear and unambiguous and which constitutes a complete expression of the parties' intentions. However, on appeal plaintiff admits that "neither the parties, nor their attorneys, anticipated that the closing of the subject transaction would be delayed for almost seven months after the plaintiffs took possession of the premises. As a result, the contract is silent as to the rights and obligations of the parties under the circumstances which are now before this Court." (Plaintiff's brief, at 15.) The silence of the contract with respect to the unanticipated delay in closing, acknowledged by both parties, brings the case within the purview of section 204 of the Restatement.

Thus, we conclude that it was proper for the trial court to supply terms which it determined to be reasonable, either by construing the expressed terms together with the circumstances surrounding and occurring subsequent to the formation of the contract, or on the basis of fundamental principles of fairness, or both. That is precisely what the court did. Further, the supplying of reasonable terms by the court to a contract which is substantially performed but which is devoid of operative terms to resolve the issues before the court constitutes neither an unwarranted judicial reformation of the contract nor a disregard for the general principles of contract law.

In ruling that plaintiff was obligated to pay defendant an amount equivalent to seven months' interest on the $180,000 purchase money mortgage and to reimburse defendant for the property's operating expenses paid by defendant during that period, the court relied on *Atchison, Topeka & Santa Fe R.R. Co. v. Chicago & Western Indiana R.R. Co.* (1896), 162 Ill. 632, and *Hanson v. Duffy* (1982), 106 Ill. App. 3d 727, 435 N.E.2d 1373. In *Hanson,* the appellate court ruled that under an executory sales contract the vendor is entitled to interest at the legal rate on the unpaid purchase balance from the vendee in possession, even though the vendor has not delivered the deed, unless the vendee has placed the purchase money beyond his own use, or meanwhile incurred liability for payment of interest to a prospective mortgagee. The *Hanson* court observed that the rule derives from the equitable proposition recognized by the supreme court in

*Atchison*, in *Rankin v. Rankin* (1905), 216 Ill. 132, and in *Bear v. Fletcher* (1911), 252 Ill. 206, that the vendee should not enjoy beneficial use of the premises as well as the purchase money without compensating the vendor for either. These authorities directly support the argument of defendant that to allow the plaintiff to possess and use the property, as well as retain the purchase money without compensating defendant for either, results in an inequitable deprivation to defendant and an unjust enrichment to plaintiff. In this regard, the court in *Hanson* explained that the interest accruing to the vendor is not an award of damages based on a breach of contract by the vendee in failing to pay money when it was due but, rather, compensation to the vendor for the vendee's use of the unpaid purchase monies remaining in the vendee's possession. See also *Meeker v. Gray* (1986), 142 Ill. App. 3d 717, 492 N.E.2d 508 (expressly following *Hanson* and *Atchison* in ruling that under an executory sales contract the purchaser in possession was required to pay interest to the vendor on the balance due of the purchase price of a farm).

Plaintiff alternatively asserts that the order fashioned by the trial court improperly compensated defendant twice for the period of time plaintiff was in possession of the property. He argues that even assuming that the application of equitable principles was proper in this case, the appropriate remedy should have been an award of either interest or a fair *per diem* rental charge, but not both. He maintains that there was no basis either in the written contract or under the authorities relied on by the trial court to impute an obligation by him to pay what he interchangeably refers to as *"per diem* use and occupancy payment," "rental charge" and *"per diem* rent" in addition to interest. Plaintiff urges that if damages are to be awarded at all, under the equitable principles enunciated in *Hanson* and *Atchison*, the only appropriate award is that of interest. He requests that we therefore reverse the portion of the trial court's order ordering him to pay *per diem* rent. In our opinion, plaintiff's argument is both legally and factually flawed.

Initially, plaintiff correctly notes that in *Hanson*, the court held that the vendee in possession was not obligated to pay rent to the vendor. However, in that case, the issue of rent was discussed in the context of a dispute arising by reason of the prior relationship of the parties, which had been that of lessor-lessee. The basis of the court's ruling was that once the lessee exercised an option to purchase, the relationship became that of vendor-vendee, that the lease then terminated, and that the vendor was no longer entitled to collect rent from the vendee under the terms of the terminated lease. Not only is that

portion of the *Hanson* case factually distinguishable from the case at bar but, contrary to plaintiff's assertion, the court's ruling on that issue does not translate into the proposition that a vendee in possession is obligated to pay the vendor *only* the interest on the purchase price.

The *Hanson* decision aside, the fatal flaw in plaintiff's argument in his characterization of the trial court's order as requiring him to pay *"per diem* rent" in addition to interest for the seven months he was in preclosing possession. The order contains no provision for rent, *per diem* or otherwise.

If the closing had occurred in July, as was intended under the terms of the contract, plaintiff, as owner of the property, would have been (1) entitled to all rent payments from the tenants; (2) obligated for all expenses attendant to the ownership and operation of the premises, *i.e.*, taxes, insurance and utilities; and (3) liable for payment of interest on the purchase money mortgage held by defendant. The order before us requires that (1) defendant recompense plaintiff an amount equivalent to the rents defendant collected from the nonparty tenants; (2) plaintiff pay all expenses attendant to the ownership and operation of the premises; and (3) plaintiff pay an amount equal to seven months' interest on the purchase money mortgage held by defendant during the seven months he was in possession. We reiterate that there is no provision in the order before us for the payment by plaintiff of rent to defendant. Rather, the court fashioned an order which, in effect, put the parties in the positions they would have been, *i.e.*, owner and mortgagee, had the seven-month closing delay not occurred.

■ Finally, we are not persuaded by plaintiff's argument that the date from which "damages" should have been calculated was September 14, 1979, rather than July 23, 1979, because September 14 was the first "agreed-upon date of closing." As we noted during our summary of the facts in this case, there is some dispute as to the exact date closing was originally to have occurred (the record strongly indicates the parties intended closing to occur in mid-July) and the reasons it did not occur as originally expected. Irrespective of the parties' disagreement on this matter and their mutual assertions of fault by the other, we hold that the trial court was correct in finding that the determinative factor is the date on which plaintiff took possession of the property. It is undisputed that plaintiff took possession on July 23, 1979, and continued in beneficial use of the premises until February 22, 1980, at which time the transaction was concluded. Based on the equitable principles we have found to be applicable, we find no error in the court's calculation of the respective liabilities of the parties

from July 23, 1979, the date plaintiff took possession of the property.

For the reasons stated, we affirm the order of the trial court in its entirety.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.