LOUIS V. PRITCHETT, Plaintiff-Appellee, v. ASBESTOS CLAIMS MANAGEMENT CORPORATION *et al.*, Defendants-Appellants (Armstrong World Industries, Inc., *et al.*, Defendants).

Fifth District    No. 5—01—0095

Opinion filed July 26, 2002.

Russell K. Scott, of Greensfelder, Hemker & Gale, of Swansea, and William Sheehan, of Shea & Gardner, of Washington, D.C., for appellants.

John Simmons and Randall A. Bono, both of Simmons Firm, L.L.C., of Wood River, for appellee.

JUSTICE MELISSA CHAPMAN delivered the opinion of the court:

This is an appeal from an order of the circuit court entering a judgment to enforce a settlement agreement. The issues for review are whether the court erred in enforcing the settlement agreement against the defendants jointly and severally for an unpaid portion of the agreed amount of the settlement and whether the court erred in finding that the plaintiff's negotiation of a check tendered by the defendants for

less than the settlement amount did not constitute an accord and satisfaction. We affirm.

## I. FACTS

The Center for Claims Resolution (CCR) is a nonprofit corporation that was created to provide for the administration, defense, payment, and disposition of asbestos-related claims for its member corporations named as defendants in asbestos-related personal-injury lawsuits. The relationship among the members and the operation of CCR is governed by a contract, "Producer Agreement Concerning Center for Claims Resolution" (Producer Agreement). Under the Producer Agreement each member designates CCR as its sole agent in administering and arranging the evaluation, settlement, payment, or defense of all asbestos-related claims. Accordingly, CCR members are prohibited from acting on their own in response to any asbestos claims. Each member also authorizes CCR to calculate each member's share of each settlement in accordance with an established share matrix outlined in the agreement. The Producer Agreement provides that only those that are parties to the agreement may challenge or enforce any such allocation determinations. Further, under the agreement, CCR handles each asbestos-related claim on behalf of all member corporations and will not settle an asbestos-related claim on behalf of fewer than all of its member corporations.

On June 27, 1999, the plaintiff, Louis V. Pritchett, brought suit against Armstrong World Industries, Inc., The Asbestos Claims Management Corp., Certain-Teed Corp., GAF Corp. (GAF), Quigley Company, and United States Gypsum Company, all members of CCR, as well as other non-CCR-member manufacturers of asbestos-containing products. The plaintiff alleged that he suffered from mesothelioma (a quickly progressing terminal cancer) resulting from his occupational exposure to asbestos-containing products manufactured and sold by the defendants. On December 2, 1999, the eve of the trial, the plaintiff orally reached a settlement with the CCR defendants and then proceeded to a trial against other named defendants not represented by CCR. In negotiating the settlement with the agent for the CCR defendants, the plaintiff agreed to accept a single sum in exchange for his releasing all CCR members, even those not named as defendants, from any liability.

On December 16, 1999, CCR sent the plaintiff a letter confirming the settlement. The letter provided in pertinent part as follows:

> "This letter will serve to confirm settlement of the above[-] captioned cases ***[.] The date of this settlement is December 16, 1999.

> You are aware that the Center for Claims Resolution (CCR) has independently and separately evaluated each of the claims, and the aggregate amount of the settlement is the total of those evaluations in the settlement negotiations process. It is understood that the law firm [representing CCR] will be allocating [amount redacted] to [the plaintiff] ***.
>
> It is agreed and understood that this settlement fully releases all members of the CCR, whether or not such members were made parties to these lawsuits. Furthermore, it is understood that this settlement includes any and all companion actions in this or any jurisdiction for the above-referenced plaintiff.
>
> In accordance with our settlement agreement, settlement funds will be forwarded to your firm ninety (90) days from the date of settlement, conditional upon receipt of required supporting documentation, as well as properly executed releases.
> ***
> Please be advised that the CCR will accept *only* Release(s) prepared by the CCR and properly executed by the plaintiff. Please be further advised that payment will not be issued prior to the CCR's receipt of such properly executed Release(s)." (Emphasis in original.)

Within two days of the plaintiff's receipt of this letter, CCR voted to terminate GAF's membership in CCR effective January 17, 2000.

On March 9, 2000, CCR sent a letter to the plaintiff that read in pertinent part as follows:

> "Pursuant to the CCR's settlement with you, enclosed is a check for [amount redacted]. This check represents the total of the amounts due for each of the claims in the attached listing, subject to payment at this time under the terms of the settlement agreement, less the amounts payable for each of these claims by GAF Corporation—which total [amount redacted]. The CCR has billed GAF Corporation for these amounts, but GAF has to date refused to pay such billings.
>
> We will be contacting you in the near future to discuss these matters further. However, if you have immediate questions, please contact me."

The plaintiff negotiated the check enclosed with the March 9, 2000, letter. On April 5, 2000, the plaintiff filed a motion to enforce the settlement agreement after unsuccessfully attempting to resolve the issue of the unpaid portion of the settlement. The plaintiff alleged in his motion that his case was settled by CCR on behalf of Armstrong World Industries, Inc., The Asbestos Claims Management Corp., Certain-Teed Corp., GAF, Quigley Company, and United States Gypsum Company. He alleged further that the settlement documents

provided by CCR were executed on February 17, 2000, and submitted for payment, that the settlement payment had not been made in full as agreed upon under the settlement, that disputes between members of CCR should not affect the settlement, and that a judgment for the full amount agreed to by CCR was sought against the corporations represented by CCR in forming the settlement agreement.

Those defendants still represented by CCR responded to the plaintiff's motion by filing a memorandum with an affidavit from CCR's special counsel (Hanlon affidavit) that explained CCR's Producer Agreement, the functions and operation of CCR, and CCR's relationship with GAF. The defendants still represented by CCR also submitted various exhibits, including the CCR Producer Agreement. GAF separately submitted memoranda, affidavits, and exhibits. On June 9, 2000, a hearing was held on the plaintiff's motion before circuit court judge Nicholas Byron. At the hearing, both GAF and the defendant CCR members agreed that CCR entered into an oral settlement on December 2, 1999, with the plaintiff for a single sum. Both GAF and the current members of CCR agreed that CCR, as their agent, had the authority to represent and enter into a settlement on behalf of all of the named CCR defendants. CCR argued that the December 16 letter was the settlement agreement and that this agreement was ambiguous on its face regarding how the money was to be paid. CCR asserted that, because all of the parties to the settlement agreement understood that each of the defendants was contributing its share to the total amount, GAF alone should be liable for the remaining balance owed the plaintiff. GAF responded by arguing that the only understanding regarding each defendant's contribution was unilateral and that neither it nor the plaintiff had anything to do with these allocations. The plaintiff echoed GAF's argument in noting that he did not enter into an agreement with any individual defendant but, rather, negotiated the settlement with CCR, the agent for all of the defendants.

CCR also argued that the letter and accompanying check sent to, and subsequently negotiated by, plaintiff on March 9, 2000, was an accord and satisfaction. For the court's review, CCR provided a copy of the letter it sent to plaintiff on March 9, 2000. The court viewed the letter as merely an acknowledgment by CCR that it settled the case for the agreed amount stated and that it paid a certain amount on behalf of certain defendants, leaving GAF with the balance due.

The court found in favor of the plaintiff and entered a judgment to enforce the settlement agreement jointly and severally. The defendants made a timely appeal. While this appeal was pending, GAF, Armstrong World Industries, Inc., and United States Gypsum Company filed for bankruptcy and have since been severed from this appeal.

## II. ANALYSIS

The defendants' arguments stem from their contention that the letter of December 16, 1999, is the settlement agreement which legally controls this case. While the defendants acknowledge that there was an oral agreement entered into on December 2, 1999, their position suggests that they consider the December 2, 1999, oral agreement preliminary to the final written agreement of December 16, 1999. The flaw in this reasoning, however, is that beyond their mere assertion that the December 16, 1999, document is the correct agreement to be construed, there is nothing in the record to support this proposition.

In fact, language in the December 16, 1999, letter itself dictates otherwise. The letter begins by stating, "This letter will serve to confirm settlement ***." A confirmation letter by definition addresses something that has already occurred. The defendants also point to the fact that the letter does not mention the issue of joint or several liability in the event of a nonpayment by a defendant. Seizing on this silence, the defendants then claim that the absence of language regarding joint or several liability creates an ambiguity. The defendants also argue that the court erred in not conducting an evidentiary hearing on the extrinsic evidence that they contend supports a finding of several liability, or alternatively they argue that the court should have conducted a jury trial on any disputed facts. Finally, they claim that the plaintiff's negotiation of the check for partial payment constituted an accord and satisfaction.

■ We begin by holding that the controlling settlement was the oral agreement entered into on December 2, 1999. Oral settlements are enforceable if there is an offer, an acceptance, and a meeting of the minds regarding the terms. *Johnson v. Hermanson*, 221 Ill. App. 3d 582, 584, 582 N.E.2d 265, 267 (1991), citing *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.*, 42 Ill. App. 3d 865, 868-69, 356 N.E.2d 837, 840 (1976). An offer, or the acceptance thereof, must be so definite with respect to its material terms that the promises and performances to be rendered by each party are reasonably certain. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 29, 578 N.E.2d 981, 983 (1991). A contract " 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof *** to ascertain what the parties have agreed to do.' " *Academy Chicago Publishers*, 144 Ill. 2d at 29, 578 N.E.2d at 983, quoting *Morey v. Hoffman*, 12 Ill. 2d 125, 131, 145 N.E.2d 644, 647-48 (1957). A meeting of the minds between the parties will occur where there has been assent to the same things in the same sense on all essential terms and conditions. *La Salle National Bank v. International Ltd.*, 129 Ill. App. 2d 381, 394, 263 N.E.2d 506, 513 (1970). In this case, the record supports all the

elements for a valid oral contract; in fact, none of the essential terms are in dispute. The parties agreed that the plaintiff was to receive a single sum of money from the CCR defendants in exchange for a release from liability for all CCR members, including those not named as defendants.

■ Having already determined that the settlement agreement at issue before this court is the oral agreement of December 2, 1999, we find it irrelevant that the letter of December 16, 1999, failed to make mention of joint or several liability. Nor does the fact that the parties failed to address this issue as a term in their oral settlement agreement affect the enforcement of this contract. Every feasible contingency that might arise in the future need not be provided for in a contract for the agreement to be enforceable. *Dato v. Mascarello*, 197 Ill. App. 3d 847, 851, 557 N.E.2d 181, 183 (1989). "A court will not add another term about which an agreement is silent; no word can be added to or taken from the agreement to change the plain meaning of the parties as expressed therein." *American States Insurance Co. v. A.J. Maggio Co.*, 229 Ill. App. 3d 422, 427, 593 N.E.2d 1083, 1086 (1992). Assuming, *arguendo*, there was an ambiguity regarding the liability issue, this still would not have hindered enforcement, since such a provision would not be a material term. Ambiguity will prevent the enforcement of a contract only where the ambiguity affects the material terms of the contract. *Wilson v. Middendorf*, 248 Ill. App. 3d 870, 872, 619 N.E.2d 179, 180 (1993).

■ We next turn to whether the court should have considered extrinsic evidence to support the defendants' contention that the parties intended several liability only. Extrinsic evidence is admissible to explain the meaning of words in a contract when there is an ambiguity or the words are susceptible of different interpretations. *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 283, 154 N.E.2d 683, 689 (1958). This well-recognized exception to the parol evidence rule does not apply to the instant case since there is no ambiguity to clarify or words to interpret. Here, the parties simply omitted any reference to how liability would be handled in the event of a default. It is understandable now, in light of their dispute with GAF, why the defendants would wish for such a provision, hindsight being 20/20. However, a presumption exists "against provisions that easily could have been included in the contract but were not." *Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 581, 641 N.E.2d 957, 962 (1994). It is not the court's role to supply missing terms in this kind of situation. A contract does not become ambiguous just because the parties do not agree on its meaning. *Pokora v. Warehouse Direct, Inc.*, 322 Ill. App. 3d 870, 876, 751 N.E.2d 1204, 1209 (2001). Because there was no issue

of ambiguity of a material term, the court properly did not consider extrinsic evidence.

Even if extrinsic evidence were proper in this case, we fail to see how the introduction of the Producer Agreement and the Hanlon affidavit could have provided the court with any insight into the intentions of the parties when entering into the settlement agreement. The Producer Agreement is a contract between the CCR members that regulates the internal dealings of its members with respect to asbestos litigation. This document reveals the unilateral intent of its members regarding rights and liabilities among themselves and bears no legal relationship to the plaintiff. The Hanlon affidavit, filed by CCR's special counsel, does nothing more than explain how CCR itself cannot be held liable for the settlement shortfall (which is not a point of contention) and expounds upon the meaning of the Producer Agreement and the reasons why GAF, not the CCR members, should be held liable for the settlement shortfall. Both of these documents are legally irrelevant and only serve to interject extraneous matters.

■ Because we have found that the trial court properly excluded extrinsic evidence on the issue of joint and several liability and because the parties omitted addressing this issue in their settlement, we now must look to principles of Illinois contract law to determine whether the settlement is a joint and several obligation, as the plaintiff contends, or a several obligation, as the defendants contend. Under Illinois law, generally, "all joint obligations and covenants shall be taken and held to be joint and several obligations and covenants." 765 ILCS 1005/3 (West 2000); see also *Brokerage Resources, Inc. v. Jordan*, 80 Ill. App. 3d 605, 608, 400 N.E.2d 77, 80 (1980). "If two or more parties to a contract owe a joint and several duty of performance to another party to the contract and the duty is not performed, each may be liable for the entire damages resulting from the failure to perform." *Brokerage Resources, Inc.*, 80 Ill. App. 3d at 608, 400 N.E.2d at 80. Here the defendants acted collectively, through their agent, in promising a single performance (the payment of one undivided sum to the plaintiff). The fact that the defendants agreed among themselves, unbeknownst to the plaintiff, that each would be liable to the plaintiff only for their individual share of the settlement as calculated by their agent does not prevent them from being held jointly and severally liable. In the absence of any language restricting the defendants' liability to several, we hold that the trial court was correct in finding the defendants jointly and severally liable. As the trial judge below aptly noted, "The liability is joint and several, any way you look at it."

■ We also hold that the trial court committed no error in not holding an evidentiary hearing or a jury trial. At the hearing to enforce

settlement, no one requested an evidentiary hearing or a jury trial on any issue. An evidentiary hearing may be appropriate when there are disputed issues regarding the formation and terms of a settlement agreement. *Janssen Brothers, Inc. v. Northbrook Trust & Savings Bank*, 12 Ill. App. 3d 840, 843, 299 N.E.2d 431, 433 (1973). However, because the parties have not identified a relevant factual dispute to decide, an evidentiary hearing is not required. *Schroeder v. CMC Real Estate Corp.*, 157 Ill. App. 3d 757, 763, 510 N.E.2d 1045, 1049 (1987). "If the agreement is a valid contract, the parties may not repudiate it and the trial court may enforce it summarily." *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 148, 685 N.E.2d 423, 425 (1997). The legal effect of the omitted provision on joint or several liability became a matter of law for the court to determine. The court correctly ruled that the omission created joint and several liability as a matter of law.

■ Finally, we address the issue of accord and satisfaction. Accord and satisfaction is a well-settled doctrine. Where the facts upon which the claim of accord and satisfaction is asserted are not substantially disputed, the question of the creditor's assent is one of law to be determined by the circuit court. *Quaintance Associates, Inc. v. PLM, Inc.*, 95 Ill. App. 3d 818, 822, 420 N.E.2d 567, 570 (1981). "An accord and satisfaction is an agreement between the parties which settles a *bona fide* dispute over an unliquidated claim." *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 911, 611 N.E.2d 619, 623 (1993). For an accord and satisfaction to operate, "there must be (1) an honest dispute between the parties as to the amount due at the time payment was tendered; (2) a tender of payment with the explicit understanding of both parties that it is in full payment of all demands; and (3) an acceptance by the creditor with the understanding that the tender is accepted as full payment." *A.F.P. Enterprises, Inc.*, 243 Ill. App. 3d at 911, 611 N.E.2d at 623. "[P]artial payment of a fixed and certain demand which is due and not in dispute is no satisfaction of the whole debt even where the creditor agrees to receive a part for the whole ***." *A.F.P. Enterprises, Inc.*, 243 Ill. App. 3d at 911, 611 N.E.2d at 623.

■ Again, the letter the defendants sent to the plaintiff on March 9, 2000, included, in pertinent part, the following language:

> "Pursuant to the CCR's settlement with you, enclosed is a check for [amount redacted]. This check represents the total of the amounts due for each of the claims in the attached listing, subject to payment at this time under the terms of the settlement agreement, less the amounts payable for each of these claims by GAF Corporation—which total [amount redacted]. The CCR has billed GAF Corporation for these amounts, but GAF has to date refused to pay such billings.

> We will be contacting you in the near future to discuss these matters further. However, if you have immediate questions, please contact me."

In reviewing the March 9, 2000, letter the defendants sent to the plaintiff, we find that the defendants have failed to establish that an accord and satisfaction occurred. First, neither the letter nor the record shows that an honest dispute existed between the defendants and the plaintiff concerning the amount that was due to the plaintiff. The only dispute communicated in the letter involved CCR and GAF, not the plaintiff. The defendants contend that there was an honest dispute concerning the liability of the other CCR members for GAF's share, as calculated by CCR. However, that is not a dispute concerning *the amount owed to the plaintiff*; instead, it is a dispute concerning *who will pay* the amount owed to the plaintiff. This dispute does not concern the plaintiff.

Second, the defendants' claim—that the letter accompanying the check stated that the check was in full satisfaction of the amount owed under the settlement—is contrary to the plain language of the letter. The letter merely indicates, as the trial judge observed, that CCR paid a certain amount on behalf of certain defendants, leaving GAF with the balance due.

Lastly, the defendants argue that the plaintiff's negotiation of the check tendered on March 9, 2000, represented his acceptance and understanding of the accord and satisfaction. However, based on our analysis above, the plaintiff cannot be said to have negotiated the check tendered by the defendants with the understanding or notice that he was accepting the amount as full payment. We conclude that none of the elements necessary to create a valid agreement based on accord and satisfaction were present here. Accordingly, the circuit court did not err in rejecting the defendants' assertions at the June 9, 2000, hearing.

### III. CONCLUSION

■ Public policy in Illinois favors settlements and dictates that, absent fraud or duress, settlements should be final. *Johnson*, 221 Ill. App. 3d at 585, 582 N.E.2d at 267, citing *Fitzgerald v. Theisen*, 101 Ill. App. 3d 193, 196, 427 N.E.2d 1044, 1046 (1981). The defendants in this case acted, with others, to form an agreement in which they jointly promised one single performance to one single promisee. However, the defendants' arguments throughout have focused little on the agreement entered into with the promisee but, instead, have focused upon a dispute among the fellow promisors. Based on the record before us, we hold that the circuit court's enforcement of the settlement agreement

jointly and severally is not against the manifest weight of the evidence. To hold otherwise, based on the record before us, would dilute the binding effect of oral compromise-and-settlement agreements, permitting parties thereto to change their minds at their pleasure.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

MAAG, P.J., and HOPKINS, J., concur.