SIXTH DIVISION

February 28, 2003

No. 1-02-1289

UNIVERSAL SCRAP METALS, INC.,

Plaintiff-Appellant,

v.

J. SANDMAN AND SONS, INC., ALBERT SANDMAN, MARTIN VASQUEZ, CITY SCRAP METAL, L.L.C., and GLENN THOMPSON,

Defendants-Appellees.

)))))))))

)

)

Appeal from the

Circuit Court of

Cook County

No. 01 L 4654

Honorable Lynn M. Egan

and Mary A. Mulhern,

Judges Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Universal Scrap Metals, Inc. (Universal), appeals from the trial court’s dismissal of its complaint against defendants J. Sandman & Sons, Inc., Albert Sandman, Martin Vasquez, City Scrap Metal, L.L.C., and Glenn Thompson.  Universal sued defendants for breach of contract and tortious interference with contract after J. Sandman & Sons, Inc. (S&S), sold a large portion of its assets to City Scrap Metal, L.L.C. (City Scrap).  Universal alleged that the sale to City Scrap violated an agreement that granted Universal the right of first refusal to purchase, manage or operate S&S.  The central issue in this appeal is whether the absence in the agreement of an express method of determining the price Universal would pay for S&S renders the right-of-first-refusal provision unenforceable.  For the reasons that follow, we affirm the judgment of the trial court.

Universal, S&S and City Scrap were in the business of purchasing and reselling nonferrous scrap metals.  On July 6, 1996, Universal and S&S executed a document titled “UNDERSTANDING BETWEEN J. SANDMAN & SONS, AND UNIVERSAL SCRAP METALS.”  At that time, Albert Sandman was the majority shareholder of S&S.  Vasquez was a minority shareholder.  
Pursuant to the document, Universal was to provide S&S with a line of credit for use in purchasing scrap metals, and S&S was to sell its nonferrous scrap metal to Universal. 

Paragraph 6 of the document stated:

“6.  If at some future time the principal(s) of J. SANDMAN & SONS decide to sell, relinquish or limit participation in the business, it is agreed that Universal will have the ‘right of first refusal’ to purchase, manage, or otherwise operate Sandman’s business under mutually agreed upon conditions.”

Universal’s complaint alleged that the document constituted a valid and enforceable contract
 and that in March 2001, S&S breached paragraph 6 by selling virtually all of its operating assets to City Scrap without offering Universal a right of first refusal.  Universal also alleged tortious interference with contract against City Scrap, Thompson and Vasquez.  

S&S moved to dismiss Universal’s complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)), arguing that the right of first refusal is unenforceable as a matter of law because it does not contain a method to determine the price and terms of a sale of S&S to Universal but instead states that the terms would be “mutually agreed upon.”  Furthermore, S&S contended, the document was not a contract but rather a memorialization of its business association with Universal that could be terminated at any time.  Vasquez adopted S&S’s motion to dismiss.  City Scrap and Thompson also moved for dismissal of the complaint, contending that paragraph 6 was too indefinite to be enforced.

In granting the motions to dismiss with prejudice, the trial court stated that the right of first refusal did not expressly state the method by which the parties could determine the terms of a sale.  Acknowledging Universal’s argument that a majority of courts have held that a right of first refusal does not need to expressly provide the price to be paid, the trial court noted that Illinois has not adopted the view that a right of first refusal implicitly means that the right is to be exercised based on the terms of a third-party offer.  The trial court held that a right of first refusal “must contain some language which asserts the method of determining price” and noted that paragraph 6 provided for circumstances other than an outright sale of S&S to Universal.  The court found the indefiniteness of the right-of-first-refusal provision to be dispositive and did not address the parties’ remaining arguments.  

After the trial court granted S&S and City Scrap’s motions to dismiss, Universal filed a motion to reconsider and sought to amend its complaint to allege that the parties had orally agreed that Universal would be given the opportunity to match any purchase offer made by a third party.  Universal’s motion was denied.  On appeal, Universal asks this court to reverse the trial court’s rulings and remand for further proceedings. 

A motion to dismiss under section 2-615 tests the legal sufficiency of a pleading, with all well-pleaded facts taken as true and reasonable inferences from those facts drawn in favor of the plaintiff.  
U.S. Fire Insurance Co. v. Zurich Insurance Co.
, 329 
Ill. App. 3d
 987, 1001-02, 768 
N.E.2d 
288, 299 (2002).  The issue on appeal from the granting of a section 2-615 motion is whether the allegations in the complaint, viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
U.S. Fire Insurance
, 329 
Ill. App. 3d
 at 1002, 768 
N.E.2d 
at 299.  The sufficiency of a complaint is a question of law, which we review 
de novo
.  
U.S. Fire Insurance
, 329 
Ill. App. 3d
 at 1002, 768 
N.E.2d
 at 299.   

We first address the dismissal of Universal’s breach of contract counts.
(footnote: 1)  Universal alleged that it entered into a valid and enforceable contract with S&S.  For a contract to be enforceable, its terms and provisions must enable the court to ascertain what the parties have agreed to do.  
Pritchett v. Asbestos Claims Management Corp.
, 332 
Ill. App. 3d
 890, 896, 773 
N.E.2d 
1277, 1282 (2002).  As noted in 
Miller v. Bloomberg
, 26 
Ill. App. 3d
 18, 19, 324 
N.E.2d 
207, 208 (1975), “price is an essential ingredient of every contract for the transfer of property and must be sufficiently definite and certain or capable of being ascertained from the contract between the parties, in order to make the contract capable of enforcement.”  

A right of first refusal need not specify the price and terms, as long as it provides a method whereby those factors may be ascertained. 
 Kellner v. Bartman
, 250 
Ill. App. 3d
 1030, 1035, 620 
N.E.2d 
607, 610 (1993).  At the outset, w
e strongly reject Universal’s contention that the placement of “right of first refusal” in quotation marks “was an express means of indicating that [the parties] intended to define that phrase as a term of art as it is known and used in the business world.”  A term of art is defined as “a word or phrase having a specific signification in a particular art, craft or department of knowledge; a technical term.”  Webster’s Third New International Dictionary (1993).  Terms such as "negligence
," "attorney fees" and "dismissal with prejudice" need not be set off in quotation marks to carry legal meanings; rather, those meanings are implied.  Conversely, the placement of a word or group of words in quotation marks does not magically create a term of art.   

Universal points out that Illinois courts have not specifically addressed whether a right of first refusal must expressly state a method of determining price and 
asks this court 
to join the jurisdictions that hold that a right of first refusal implicitly means that the holder of the right is obligated to pay the price offered by a third party.  See, 
e.g.
, 
Steinberg v. Sachs
, No. 3D01-2429 (Fla. App. January 15, 2003); 
Roy v. George W. Greene, Inc.
, 404 Mass. 67, 533 
N.E.2d
 1323 (1989).
  

S&S responds that the trial court correctly found the right of first refusal in this case was unenforceable because it does not indicate a method of determining a price and terms of a sale of its assets to Universal.  City Scrap raises essentially the same contentions.  
S&S and City Scrap point to our supreme court’s decision in 
Folsom v. Harr
, 218 Ill. 369, 75 N.E. 987 (1905), which held that when a contract gives a party an opportunity to buy, it is not necessary that the contract state the price to be paid; however, the contract must provide a method to determine the price and terms of the sale.
  
Folsom
, 218 Ill. at 374, 75 N.E. at 989. 

The agreement in 
Folsom
 provided that if the first party should sell the property, the second party should have the first chance to purchase it.  
Folsom
, 218 Ill. at 372, 75 N.E. at 987.  The
 
court held that it could not grant specific performance because the contract “fixed no price and fixed no mode of determining the price” for the property.  
Folsom
, 218 Ill. at 374, 75 N.E. at 989.  
Folsom
 distinguished the terms in that case from those in 
Hayes v. O’Brien
, 149 Ill. 403, 37 N.E. 73 (1894), which involved a contract specifying that the right of first refusal could be exercised on the terms offered by a third party.  
Folsom
, 218 Ill. at 373-74, 75 N.E. at 988-89.    
 
Universal argues that more recent cases from other jurisdictions espouse the modern view and should be followed despite 
Folsom
.  We decline to do so.  The agreement between Universal and S&S should not be read to render any portion inoperative or superfluous.
  Divane v. Smith
, 332 
Ill. App. 3d
 548, 553, 774 
N.E.2d 
361,
 365 (2002).  The agreement gives Universal, among other things, the right of first refusal to purchase S&S “under mutually agreed upon conditions.”  
If “right of first refusal” inherently meant that the right could be exercised on the terms of a third-party offer, as Universal contends, any further description of the right of first refusal, such as the phrase “under mutually agreed upon conditions,” would be superfluous.  Indeed, the term “under mutually agreed upon conditions” indicates that the parties contemplated negotiations beyond their initial agreement.  Had the parties intended to expressly base their selling price on a third-party offer, they could have provided so in the agreement.  

Furthermore, the agreement refers not only to the sale of S&S but also discusses Universal’s possible management or operation of S&S, which might occur without the involvement of a third party.  Universal asserts that only the sale provision would be subject to the terms of a third-party offer and asks this court to find the remainder of paragraph 6 irrelevant.  However, reading paragraph 6 as a whole, as we must, we again note that the parties agreed that Universal could “purchase, manage, or otherwise operate [S&S] under mutually agreed upon conditions.”  The parties’ language indicates that any transaction between them, be it a sale or other arrangement, was to occur under agreed terms and not under conditions proposed by unknown third parties or by this court.  

Universal also argues that because the price term is implicit in the use of the phrase “right of first refusal,” the
 “mutually agreed upon conditions” mentioned in paragraph 6 refer to nonessential terms of a sale, such as a date and place of closing
.  Universal relies on 
White Hen Pantry, Inc. v. Cha
, 214 
Ill. App. 3d
 627, 634, 574 
N.E.2d
 104, 108 (1991),
 to argue that nonessential terms can be implied by custom or implication.  
Because we have rejected Universal’s contention that a price term is inherent in the phrase “right of first refusal” and have recognized that we must give effect to all portions of the agreement, we do not accept Universal’s argument that the phrase “mutually agreed upon conditions” refers only to nonessential terms of a sale.  Paragraph 6 indicates that the parties intended to mutually agree on all conditions, not just nonessential ones. 
 Moreover, we do not find 
White Hen
 
Pantry
 analogous.  That case involved a lease for real estate with an option to purchase the real estate for $100,000.  The purchase option ran with an option to renew the lease for a five-year period.  
White Hen Pantry
, 214 
Ill. App. 3d
 at 630, 574 
N.E.2d 
at 105.  Unlike that lease, the agreement here involves the possible purchase, management or operation of S&S by Universal and lacks a method by which the price and terms of the agreement can be ascertained.  

Universal’s position fails to recognize that all situations in which a right of first refusal could be exercised do not involve third-party buyers. 
 
In 
Kellner
, this court described the right of first refusal as preemptive, stating:

“A right of first refusal is not an option in that the holder of the right cannot force the sale of the property at a stipulated price.  [Citation.]  Instead, the right does not arise until the grantor notifies the holder of a desire to sell or until offering or contracting to sell to a third party without first giving the holder of the right of first refusal the opportunity to buy. [Citations.]  Oftentimes a right of first refusal is a right to elect to take specified property at the same price and on the same terms and conditions as are contained in a good-faith offer to purchase made by a third party. [Citations.]” 
Kellner
, 250 
Ill. App. 3d
 at 1034-35, 620 
N.E.2d
 at 610.      

Although a right of first refusal often does involve a third-party offer, 
Kellner
 acknowledges the right can also arise when a grantor notifies the holder of the right “of a desire to sell.”  
Kellner
, 250 
Ill. App. 3d
 at 1034, 620 
N.E.2d 
at 610.  In that circumstance, the grantor could offer the property to the holder at the grantor’s preferred price.  Numerous Illinois cases have described rights of first refusal in greater detail and with options that are unrelated to third-party offers.  See, 
e.g.
, 
Drayson v. Wolff
, 277 
Ill. App. 3d
 975, 981, 661 
N.E.2d 
486, 491 (1996) (right could be exercised either at proposed selling price, agreed price or price determined by impartial appraisal); 
In re Estate of Halas
, 175 
Ill. App. 3d
 180, 182-83, 529 
N.E.2d 
768, 770 (1988) (holder of right must pay “greater of the price originally offered by the other party, or the net fair market value per share, as determined by three appraisers”); 
National Aircraft Leasing, Ltd. v. American A
irlines, Inc.
, 74 
Ill. App. 3d
 1014, 1019, 394 
N.E.2d 
470, 475 (1979) (describing conditions of right of first refusal triggered upon third-party offer);
 Miller
,
 
26 
Ill. App. 3d
 at 19-20, 324 
N.E.2d 
at 208 (“fair market value,” “reasonable value” or “current market value” sufficiently certain methods of determining price.)    

For a contract to be enforceable, its terms and provisions must enable the court to ascertain what the parties have agreed to do.  
Pritchett
, 332 
Ill. App. 3d
 at 896, 773 
N.E.2d 
at 1282.  
The agreement here indicates the parties would negotiate Universal’s purchase, management or operation of S&S if and when those discussions were necessary and that any transaction would take place “under mutually agreed upon conditions.”  Paragraph 6 represents the parties’ intent to engage in further negotiations in the future.  We affirm the trial court’s ruling that paragraph 6 was not sufficiently definite and therefore unenforceable.

Universal next contends that if we find the agreement unenforceable due to the indefiniteness of the right of first refusal provision, 
the trial court erred in not allowing Universal to amend its complaint to allege that before, during and after the execution of the agreement, Sandman and Universal’s president, Philip Zeid, orally agreed that Universal could exercise its right of first refusal and purchase S&S at the same price contained in a third-party offer. 

In the trial court, Universal presented its request to amend its complaint as part of a motion to reconsider.  In a motion to reconsider, a party should bring before the court newly discovered evidence, changes in the law or errors in the court’s prior application of existing law.
  Chelkova v. Southland Corp.
, 331 
Ill. App. 3d
 716, 729, 771 
N.E.2d
 1100, 1111 (2002).  “Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling.”  
Gardner v. Navistar International Transportation Corp.
, 213 
Ill. App. 3d
 242, 248, 571 
N.E.2d 
1107
, 1111 (1991).  Whether to grant or deny such a motion is within the trial court’s discretion and will be not reversed absent the abuse of that discretion.  
Chelkova
, 331 
Ill. App. 3d
 at 729, 771 
N.E.2d 
at 1111.  Because Universal offered no new evidence or legal bases for its motion, the trial court’s denial of the motion to reconsider was well within its discretion.      

Assuming that 
Universal had presented a proper motion to amend its pleadings, in reviewing the denial of such a motion, this court analyzes whether (1) the proposed amendment would cure the defective pleading; (2) the proposed amendment would cause prejudice or surprise to the defendant; (3) the proposed amendment is timely; and (4) previous opportunities to amend the pleadings could be identified.  
Zubi v. Acceptance Indemnity Insurance Co.
, 323 
Ill. App. 3d
 28, 40, 751 
N.E.2d 
69, 80 (2001).  The trial court’s ruling on the amendment of pleadings will not be overturned absent an abuse of discretion. 
 Zubi
, 323 
Ill. App. 3d
 at 40, 751 
N.E.2d
 at 80.
  Universal 
argues that the second, third and fourth factors in 
Zubi
 have been met and that, regarding the first factor, the proposed amendment would cure its pleading by expressly providing the missing price term.  We first note regarding the third and fourth factors, however, that a plaintiff generally is not allowed to file an amended complaint if the facts the plaintiff seeks to add were known at the time of the original pleading.  Universal does not claim that it did not know about the oral agreement when it filed its initial complaint. 

Regarding the proposed amendment’s potential to cure the pleading, Universal asserts that Sandman and Zeid’s oral agreement provides the missing price term.  A party may not introduce parol, or extrinsic, evidence of a prior or contemporaneous agreement to show additional terms of a written agreement unless the writing is incomplete or ambiguous.  
Eichengreen v. Rollins, Inc.
, 325 
Ill. App. 3d
 517, 521-22, 757 
N.E.2d
 952, 956 (2001).  
Ambiguity exists if terms of an agreement are capable of more than one reasonable construction. 
 Owens v. McDermott, Will & Emery
, 316 
Ill. App. 3d
 
340, 348, 736 
N.E.2d 
145, 153 (2000).
  P
aragraph 6 memorializes the parties’ intention to agree upon conditions of any purchase, management or operation of S&S by Universal.
  Universal argues that because price is not a “condition” of sale, the oral agreement does not contradict paragraph 6.  However, we have already rejected Universal’s assertion that “mutually agreed upon conditions” refers only to nonessential terms and not to price.  Although paragraph 6 is indefinite for the lack of a price term, that does not create ambiguity; paragraph 6 states that the parties were to agree on a price.

We note that parol evidence also can be admitted if the writing is not a complete integration of the parties’ agreement
.  
Eichengreen
, 325 
Ill. App. 3d
 at 522, 757 
N.E.2d 
at 956.  Here, paragraph 6 indicated the parties would proceed under agreed conditions to be decided when and if the principal of S&S decided to sell or limit participation in the business.  
The reference to future discussions does not render paragraph 6 an incomplete expression of the parties’ agreement; it represents the parties’ complete agreement at that time.  Because paragraph 6 is neither ambiguous nor incomplete, the trial court properly denied Universal’s request to amend its complaint to include parol evidence.  

For all of the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

O'BRIEN, P.J. and O'MARA FROSSARD, J. concur.

FOOTNOTES
1: 
For the purpose of brevity, we refer to S&S and Sandman simply as “S&S.” 
In addition to S&S’s arguments, City Scrap and Thompson have filed a brief with this court contending that the trial court properly dismissed plaintiff’s claims of tortious interference with contract.