AARON THOMAS, Plaintiff-Appellant, v. SHMUEL FUERST *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—03—0795

Opinion filed January 16, 2004.

---

930

Aaron Thomas, of Memphis, Tennessee, appellant *pro se*.

Duane Morris, L.L.P., of Chicago (Howard M. Hoffmann, Amy E. Mc-Cracken, and Rachel G. Pontikes, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Aaron Thomas, a member of an Orthodox Jewish community, filed a second amended complaint against defendants Rabbi Shmuel Fuerst, Rabbi Yosef Wainkrantz, Rabbi Chaim Goldzweig (collectively referred to as the Rabbinic Court), and Danny Shabat, claiming the Rabbinic Court had excommunicated plaintiff from the Jewish community in order to punish him for initiating a civil action against Shabat. Plaintiff alleged, by excommunicating him, the Rabbinic Court committed libel, violated his right to due process, intentionally inflicted emotional distress, and engaged in a conspiracy with Shabat. The circuit court dismissed plaintiff's second amended complaint pursuant to section 2—619.1 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—619.1 (West 2000)). Plaintiff appeals, claiming the circuit court erred in dismissing his second amended complaint, as each count in the complaint states a cause of action. We affirm.

In his second amended complaint, plaintiff pleaded that he lives "in a strict orthodox Jewish community and culture wherein observance of Jewish law is universal, and wherein such observance is a prerequisite for normal societal relations and normal economic activity." The Rabbinic Court, also referred to as a Beit Din, is responsible for administering proper law and order within the orthodox Jewish community.

Plaintiff pleaded that from 1998-2001, he prosecuted a civil complaint in the Cook County circuit court against Shabat and his

wife for their "sexual exploitation" of plaintiff's minor son. During February 2001, Shabat asked Rabbi Fuerst to use his position as head of the Rabbinic Court to "neutralize" plaintiff's lawsuit against the Shabats.

Plaintiff pleaded that in February, May, and July 2001, he received three summons to appear before the Rabbinic Court to "justify" his civil lawsuit against the Shabats. Each time, plaintiff agreed to appear before the Rabbinic Court; however, no hearing date was set.

Plaintiff pleaded that on October 30, 2001, Rabbi Fuerst telephoned him and demanded he immediately drop his civil lawsuit against the Shabats. Plaintiff refused and stated he was willing to appear before the Rabbinic Court to justify his lawsuit against the Shabats.

Plaintiff pleaded that on December 4, 2001, the Shabats' attorney contacted plaintiff regarding the settling of his case. Plaintiff refused to settle. Later that same day, plaintiff was served with a notice of excommunication, entitled a "Writ of Defiance" (the Writ) typed on Rabbi Fuerst's official stationary and composed in Hebrew. Translated into English, the Writ states:

> "To our great sorrow we are enjoined to fulfill our duty under Torah law and publicly proclaim our anguish, that there now is a man by the name of [plaintiff], on whom we have served three summonses, and to whom we have also telecommunicated, to appear before the Rabbinic Court regarding the complaint of Mr. and Mrs. Daniel Shabat (they should be blessed with longevity); and he has defiantly refused to appear before the Rabbinic Court; and not only this but he has additionally sinned in laying claim to them in the gentile civil court, Heaven forfend, and even after being warned, he remains defiant and maintains his suit in civil court.

> Therefore, it is our duty to uphold our holy law and proclaim in the most public fashion that [plaintiff] is a defiant scofflaw; both for his defiant refusal to appear before the Rabbinic Court, and for his resorting to the gentile civil court, proscription for which is found in Chosen Mishpat, Sections 11 and 26, and in Yoreh Deah, Section 334. And the severity for which is explicit in Chosen Mishpat, Section 26, that whoever resorts to the gentile civil courts is a blasphemous infidel who strikes out against Mosaic Law, and he deserves to be shunned and excommunicated.

> And therefore we proclaim it befitting that all good Jews distant this man from their homes, and likewise do not let him participate as part of the worship quorum, or any religious activity until he fully repents. And we have also informed [plaintiff] that he must reimburse the Shabat family (they should be blessed with longevity) for all monies they have paid to their attorneys as a result of his civil court claim against them, as elucidated in the codes."

The Writ was signed by Rabbis Fuerst, Wainkrantz, and Gold-zweig and "circulated and published *** to influential Rabbinic lead-ers and family members in the U.S.A. and Israel." The Writ forced plaintiff to abandon his profession (designing customized sunrooms for members of the Orthodox Jewish community), and seek employ-ment in his father's law office as a secretary.

Plaintiff pleaded that by excommunicating him via the Writ of Defiance, the Rabbinic Court committed libel, violated his right to due process, intentionally inflicted emotional distress, and engaged in a conspiracy with Shabat. Defendants brought a combined motion to dismiss, relying on sections 2—615 and 2—619 of the Code. See 735 ILCS 5/2—619.1 (West 2000). Pursuant to section 2—615, defendants argued that plaintiff's second amended complaint failed to state a cause of action. Pursuant to section 2—619, defendants argued the trial court lacked subject matter jurisdiction under the first and fourteenth amendments to the United States Constitution. The circuit court granted the motion to dismiss. Plaintiff filed this timely appeal.

■ A motion to dismiss under section 2—615 of the Code tests the legal sufficiency of a pleading. *Universal Scrap Metals, Inc. v. J. Sand-man & Sons, Inc.*, 337 Ill. App. 3d 501, 504 (2003). The court accepts as true all well-pleaded facts and the inferences that can reasonably be drawn from those facts. *Universal Scrap Metals*, 337 Ill. App. 3d at 504. The issue is whether, when viewed in the light most favorable to plaintiff, the allegations are sufficient to state a cause upon which relief can be granted. *Universal Scrap Metals*, 337 Ill. App. 3d at 504.

■ A section 2—619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other matters that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). When ruling on a section 2—619 motion, the trial court may consider the pleadings, depositions, and affidavits. *Krilich*, 334 Ill. App. 3d at 570. The issue on appeal is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law. *Krilich*, 334 Ill. App. 3d at 570. We review *de novo* the trial court's decision to grant a section 2—619.1 combined motion to dismiss. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634 (1996).

■ First, plaintiff argues the trial court erred by dismissing his libel claims. Although the common law originally distinguished between spoken and written defamation (slander and libel, respec-tively), in Illinois the same standard applies whether an allegedly defamatory statement is spoken or written. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 89, (1996). To establish either slander

or libel, plaintiff must show that: (1) defendant made a false statement concerning plaintiff; (2) there was an unprivileged publication of the defamatory statement by defendant to a third party; and (3) plaintiff was damaged. *Stavros v. Marrese*, 323 Ill. App. 3d 1052, 1057 (2001).

■ Defamatory statements may be actionable *per se* or actionable *per quod. Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992). A statement is defamatory *per se* if it is so obviously and materially harmful to the person to whom it refers that injury to his reputation may be presumed. *Kolegas*, 154 Ill. 2d at 10. Illinois law recognizes five categories of statements that are considered defamatory *per se. Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998). One of those categories is "words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Kolegas*, 154 Ill. 2d at 10.

■ Statements are defamatory *per quod* under two circumstances: (1) where the defamatory character of the statement is not apparent on its face and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning; and (2) where the statement is defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se. Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103. Unlike a defamation *per se* action, plaintiff must plead and prove special damages to recover for defamation *per quod. Bryson*, 174 Ill. 2d at 103 (1996).

Plaintiff contends that the Rabbinic Court defamed him by proclaiming in their Writ of Defiance that plaintiff is an "infidel" and "defiant scofflaw" deserving excommunication from Jewish society for failing to appear before the Rabbinic Court. Plaintiff contends that such language constitutes defamation *per se*, as it falsely imputes a lack of ability in his profession or business. Alternatively, plaintiff argues that the language contained in the Writ of Defiance constitutes defamation *per quod*, as it specially damages his ability to earn a living within the Jewish community.

■ Defendants contend that the contents of the Writ of Defiance are true and, thus, not defamatory. To determine the truth or falsity of the Writ's contents, this court would have to examine and interpret the Jewish law cited therein, specifically, sections 11 and 26 of the Chosen Mishpat, and section 334 of the Yoreh Deah, which form the basis for the proclamation that plaintiff is a defiant scofflaw and infidel deserving excommunication. However, the first amendment to the Constitution of the United States (U.S. Const., amend. I) bars any secular court from involving itself in the ecclesiastical controversies that may arise in a religious body or organization: "it would be a vain consent and would lead to the total subversion of *** religious bodies,

if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed." *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 729, 20 L. Ed. 666, 676 (1872). Where resolution of ecclesiastical disputes cannot be made without extensive inquiry by civil courts into religious law and polity, "the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them." *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 49 L. Ed. 2d 151, 162, 96 S. Ct. 2372, 2380 (1976).

The circuit court did not err in dismissing plaintiff's defamation counts, as resolution of those counts cannot be made without extensive inquiry by civil courts into religious law and polity.

■ Next, plaintiff contends the trial court erred by dismissing his due process claims. Plaintiff pleaded that the Rabbinic Court denied him due process by excommunicating him without first affording him a hearing. Plaintiff's contention is without merit, as no governmental body was involved in the decision to excommunicate him. The due process clause protects individuals from actions by the state, not actions by individuals. *Rosewell v. Hanrahan*, 168 Ill. App. 3d 329, 331 (1988).

Plaintiff argues *Treister v. American Academy of Orthopaedic Surgeons*, 78 Ill. App. 3d 746 (1979), compels a different result. *Treister* held that courts can review the application procedures of a private association, such as a trade or professional association, when membership in the organization is an economic necessity. *Treister*, 78 Ill. App. 3d at 755. Economic necessity may be shown where the organization or association has a monopoly over the field or profession. See *Falcone v. Middlesex County Medical Society*, 34 N.J. 582, 170 A.2d 791 (1961). Here, the Rabbinic Court is not a trade or professional association, nor does it have a monopoly over plaintiff's sunroom business. Accordingly, the trial court did not err by dismissing plaintiff's due process counts.

■ Next, plaintiff argues that the trial court erred by dismissing his claims for intentional infliction of emotional distress. To state a cause of action for intentional infliction of emotional distress, plaintiff must plead facts showing that: (1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 154 (1999); *McGrath v. Fahey*, 126 Ill. 2d 78, 86

(1988). Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances. *Fahey*, 126 Ill. 2d at 90. Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89-90 (1976). Liability is attached only in circumstances where the defendant's conduct is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' " *Public Finance Corp.*, 66 Ill. 2d at 90, quoting Restatement (Second) of Torts § 46, Comment *d* (1965). The distress inflicted must be so severe that no reasonable person could be expected to endure it. *Fahey*, 126 Ill. 2d at 86.

■ Plaintiff claims that the Rabbinic Court's act of excommunicating him from the Orthodox Jewish community is so outrageous as to support a claim of intentional infliction of emotional distress. Plaintiff has aligned himself with this particular Orthodox Jewish community and by doing so has accepted its laws, rules and procedures. One of these laws, of which plaintiff admits he was aware, allows for excommunication where, as here, the Rabbinic Court determines that plaintiff has refused three consecutive summonses to appear before it. Because of plaintiff's actions and knowledge of this community's rules and practices, the actions of the Rabbinical Court of which plaintiff complains are not so outrageous as to support a claim for intentional infliction of emotional distress. Accordingly, the trial court did not err in dismissing plaintiff's claims for intentional infliction of emotional distress.

■ Finally, plaintiff argues the trial court erred by dismissing his conspiracy counts. Plaintiff pleaded that the Rabbinic Court conspired with Shabat to libel plaintiff, deprive him of due process, and intentionally inflict emotional distress. Conspiracy is not an independent tort. Where, as here, plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails. See *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000). Accordingly, the trial court did not err in dismissing plaintiff's conspiracy counts.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

CAMPBELL, P.J., and REID, J., concur.