CRESTVIEW BUILDERS, INC., Plaintiff-Appellee, v. NOGGLE FAMILY LIMITED PARTNERSHIP *et al.*, Defendants-Appellants.

Second District   No. 2—04—0015

Opinion filed October 4, 2004.

Fred H. Dickson, Jason A. Doran, and Craig D. Hasenbalg, all of Dickson & Hasenbalg, of Aurora, for appellants.

Robert C.J. Reilly and Robert G. Gibson, both of Dommermuth, Brestal, Cobine & West, Ltd., of Naperville, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Crestview Builders, Inc., entered into a real estate sale contract with The Noggle Family Limited Partnership (NFLP). Under the contract, NFLP was to provide plaintiff with a right of first refusal on the sale of a portion of the land. The parties were ultimately unable to agree on the terms of the right of first refusal, and plaintiff filed a complaint for declaratory judgment and specific performance against defendants, NFLP and Robert Noggle and Fern Noggle, two partners of NFLP. Plaintiff moved for summary judgment and defendants moved for judgment on the pleadings. The court denied defendants' motion and granted summary judgment to plaintiff. Defendants appeal, arguing that the right-of-first-refusal provision is unenforceable. We agree, and thus we reverse.

On March 19, 1997, plaintiff entered into a contract with NFLP, whereby NFLP agreed to sell plaintiff 220 acres of land. NFLP retained possession of a homestead property located on the land. Under the contract, three closings were to take place, with a portion of the land being sold at each closing. Paragraph "R-5" of the rider to the contract provided:

"At the first closing ***, [NFLP] agrees to execute and deliver to [plaintiff] a recordable right of first refusal on [NFLP's] retained homestead."

On December 10, 1997, NFLP, without first informing plaintiff, transferred the homestead property to Robert Noggle and Fern Noggle. The parties did not discuss the right of first refusal at either the first or the second closing, and NFLP did not execute and deliver a right of first refusal to plaintiff. At the third closing, on December 15, 2000, the parties inserted the following language at the bottom of the closing statement:

"[NFLP] agrees to comply with the requirements of paragraph R-5 of the rider to the Real Estate Sales Contract by delivering a signed and recordable right of first refusal to [plaintiff] by 12/30/00 for the homestead."

Following the third closing, during December 2000 and January 2001, the parties negotiated the terms of the right of first refusal. Plaintiff suggested that the term of the right of first refusal should be 10 years, but NFLP sought a term of 3 years. The parties apparently were unable to agree on a final draft. In April 2001, plaintiff filed a complaint for declaratory judgment and specific performance against defendants. Plaintiff ultimately filed a second amended complaint seeking the court to declare that the right-of-first-refusal agreement was valid and binding and that its duration was unlimited. Plaintiff later moved for summary judgment and defendants moved for judgment on the pleadings. The trial court granted plaintiff's motion and denied defendants' motion. The court found that the agreement set forth in the closing statement was valid and binding and that plaintiff had a right of first refusal on the retained homestead for the lives of the parties. The court denied defendants' motion to reconsider, and defendants appealed.

On appeal, defendants assert that the court erred in granting plaintiff's motion for summary judgment and denying its motion for judgment on the pleadings, arguing that the right of first refusal was not valid because it was missing essential terms. A motion for summary judgment is properly granted only when the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). In considering a summary judgment motion, the court has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Travelers Insurance*, 197 Ill. 2d at 292. A motion for judgment on the pleadings requires the trial court to examine the pleadings and

determine whether there is an issue of fact or whether the controversy can be resolved as a matter of law. *Pekin Insurance Co. v. Allstate Insurance Co.*, 329 Ill. App. 3d 46, 49 (2002). On appeal, the reviewing court must ascertain whether the trial court correctly determined that the pleadings presented no issue of material fact and, if there was no such issue, whether the court correctly entered the judgment. *Pekin Insurance Co.*, 329 Ill. App. 3d at 49. We review *de novo* both the grant of summary judgment and the denial of the motion for judgment on the pleadings. *Travelers Insurance*, 197 Ill. 2d at 292; *Pekin Insurance Co.*, 329 Ill. App. 3d at 49.

■ In order for a contract to be enforceable, its terms and provisions must enable the court to ascertain what the parties have agreed to do. *Pritchett v. Asbestos Claims Management Corp.*, 332 Ill. App. 3d 890, 896 (2002). Price is an essential element of every contract for the transfer of property and must be sufficiently definite or capable of being ascertained from the parties' contract. *Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc.*, 337 Ill. App. 3d 501, 505 (2003). However, a right of first refusal need not specify the price, as long as it provides a method whereby the price may be ascertained. *Universal Scrap Metals*, 337 Ill. App. 3d at 505; *Kellner v. Bartman*, 250 Ill. App. 3d 1030, 1035 (1993).

Defendants argue that the right of first refusal in the parties' contract did not specify a method whereby the price of the homestead could be ascertained because it contained no terms other than the phrase "right of first refusal." Plaintiff responds that the use of the term "right of first refusal" is sufficient in itself to provide a method whereby the price and other terms may be ascertained. We agree with defendants.

In *Folsom v. Harr*, 218 Ill. 369 (1905), the parties entered into a lease agreement that included the following provision:

" 'Should [the defendant] conclude to sell this property, then [the plaintiff] is to have the first chance to buy the same.' " *Folsom*, 218 Ill. at 370.

The defendant sold the property without first offering it to the plaintiff and the plaintiff brought suit. The court held that the contract was unenforceable because it was uncertain and incomplete, reasoning that the contract provided no method for determining the price of the property. *Folsom*, 218 Ill. at 372-73. The court noted that the agreement would have been enforceable if it had stated that the plaintiff had the right to purchase the property under the terms offered by a third party. *Folsom*, 218 Ill. at 373.

In *Universal Scrap Metals*, a case upon which defendants rely, the parties entered into a scrap metal sales agreement that contained a right-of-first-refusal provision. The provision provided:

" 'If at some future time [the defendant] decide[s] to sell, relinquish or limit participation in the business, it is agreed that [the plaintiff] will have the "right of first refusal" to purchase, manage, or otherwise operate [the defendant's] business under mutually agreed upon conditions.' " *Universal Scrap Metals*, 337 Ill. App. 3d at 503.

After the defendant sold its assets to a third party without offering a right of first refusal to the plaintiff, the plaintiff brought a breach of contract action. At issue was whether the right-of-first-refusal provision contained a method to determine the price and other terms of the sale of the defendant's business. The court first "strongly reject[ed]" the plaintiff's contention that "the placement of 'right of first refusal' in quotation marks 'was an express means of indicating that [the parties] intended to define that phrase as a term of art as it is known and used in the business world,' " reasoning that the use of the term "right of first refusal" did not inherently mean that the right could be exercised under the terms of a third-party offer. *Universal Scrap Metals*, 337 Ill. App. 3d at 505.

The court also declined to follow decisions of other jurisdictions holding that "a right of first refusal implicitly means that the holder of the right is obligated to pay the price offered by a third party," and instead followed our supreme court's holding in *Folsom. Universal Scrap Metals*, 337 Ill. App. 3d at 505-06. The court noted that not every right of first refusal involves a third-party buyer. Although a right of first refusal often does involve a third-party buyer, the right may also arise when a seller notifies the right-holder of his desire to sell. *Universal Scrap Metals*, 337 Ill. App. 3d at 507. The court stated that "[h]ad the parties intended to expressly base their selling price on a third-party offer, they could have provided so in the agreement." *Universal Scrap Metals*, 337 Ill. App. 3d at 506. The court ultimately held that the agreement was not sufficiently definite and was therefore unenforceable.

In *Kellner*, the parties entered into a real estate contract that contained a right-of-first-refusal provision. The agreement provided, in pertinent part:

" 'In the event [the defendant] shall decide to sell his remaining farm land ***, he shall first offer the farm land to [the plaintiff] for the price and on the terms of the intended sale, by an instrument in writing, delivered or mailed to [the plaintiff] ***.' " *Kellner*, 250 Ill. App. 3d at 1032.

The defendants sold the farmland to a third party without first offering it to the plaintiff, and the plaintiff sued. The court held that the agreement was enforceable. Because the agreement stated that the

defendant had to offer the land to the plaintiff " 'for the price and on the terms of the intended sale,' " the right of first refusal contained a method whereby the price could be determined. *Kellner*, 250 Ill. App. 3d at 1036.

■ Based on *Folsom, Universal Scrap Metals*, and *Kellner*, we hold that the right of first refusal on NFLP's retained homestead is unenforceable. The right-of-first-refusal provision contains no method whereby the price of the retained homestead may be determined. In fact, the provision contains no terms whatsoever. It merely states that the plaintiff is to be given a "right of first refusal on [NFLP's] retained homestead." Like the right-of-first-refusal provisions in *Folsom* and *Universal Scrap Metals*, this provision is indefinite, and hence unenforceable.

Plaintiff first responds that the use of the term "right of first refusal" is sufficient in itself to provide a method whereby the price and other terms may be ascertained. Plaintiff notes that the term "right of first refusal" is defined in Black's Law Dictionary as a "potential buyer's contractual right to meet the terms of a third party's offer if the seller intends to accept that offer." Black's Law Dictionary 1325 (7th ed. 1999). Therefore, plaintiff argues, the definition of the term "right of first refusal" provides the method whereby the price may be ascertained, and thus, the right of first refusal in the contract is enforceable. We disagree. As discussed previously, the court in *Universal Scrap Metals* rejected a very similar argument, reasoning that not every right of first refusal involves a third-party buyer. *Universal Scrap Metals*, 337 Ill. App. 3d at 505-07; see also *Kellner*, 250 Ill. App. 3d at 1034-35 (recognizing that a right of first refusal is not always based on a third-party offer). The same reasoning applies here. Although a right of first refusal often involves a third-party offer (see *Kellner*, 250 Ill. App. 3d at 1034-35), this is not always so. Thus, the term "right of first refusal" does not, in itself, provide a method of determining the price.

Plaintiff next responds that *Universal Scrap Metals* is distinguishable in that the right of first refusal there involved the management and operation of a business as well as the purchase of assets, and included the term "under mutually agreed upon conditions." We note initially that we would have sufficient authority to reach our decision, even in the absence of *Universal Scrap Metals*. See *Folsom*, 218 Ill. at 372-73; *Kellner*, 250 Ill. App. 3d at 1035-36. In any event, we reject plaintiff's argument. Although it is true that *Universal Scrap Metals* is factually distinguishable, and that the court relied in part on those specific facts in reaching its decision, the court's ultimate holding was that the right of first refusal was indefinite because it did not provide

a method of ascertaining the price of the property. *Universal Scrap Metals*, 337 Ill. App. 3d at 505-07. In reaching that holding, the court relied on the general legal principles governing rights of first refusal enunciated in *Folsom* and *Kellner*. *Universal Scrap Metals*, 337 Ill. App. 3d at 505-07. Thus, while plaintiff correctly points out the factual distinctions in *Universal Scrap Metals*, the rationale of the case still applies.

The judgment of the circuit court of Du Page County is reversed.

Reversed.

BOWMAN and CALLUM, JJ., concur.